In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-1463

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALLAN JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 02 CR 28—**Rudy Lozano**, *Judge.*

ARGUED MARCH 29, 2005—DECIDED OCTOBER 14, 2005

Before CUDAHY, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Allan Johnson pleaded guilty to
three child pornography charges and now appeals his
sentence, which is significantly longer than the guide-
lines sentencing range because the district court judge
exercised his discretion to depart upward from the then-
applicable range. Johnson challenges only the district
court's decision on upward departure. After *United States
v. Booker,* 125 S.Ct. 738 (2005), his appeal requires us to
evaluate the reasonableness of the sentence and also to
determine whether a limited remand pursuant to *United
States v. Paladino,* 401 F.3d 471 (7th Cir. 2005) is war-
ranted. We conclude that a *Paladino* remand is unnecessary

and affirm Johnson's sentence as reasonable and adequately explained by the district court.

## I.  Background

Beginning in January 2002, Johnson downloaded child pornography from the internet and also uploaded images already in his possession in exchange for what he received. By the time he was arrested about two months later, Johnson had acquired an astonishing 10,000 to 12,000 computer images of children engaged in sexually explicit conduct, though for purposes of sentencing the government narrowed that number to 4,638 by counting only pictures of children who appeared to be under age twelve. Some files depicted children as young as five or six participating in sexual acts, and among them were 174 images of sadistic sexual acts and 42 of bestiality involving children. In addition to the child pornography images, Johnson also possessed videotapes of children, some depicting children engaged in sexually explicit conduct. He made at least one of these videotapes himself with a hidden camera in his bathroom, where he videotaped a six- or seven-year-old girl taking a shower. Johnson ultimately pleaded guilty without a written agreement to three crimes:  possession with intent to sell images of children engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(3)(B); distribution of such images, in violation of § 2252(a)(2); and receipt of such images, also contrary to § 2252(a)(2).

At sentencing, which occurred before our decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *aff'd*, 125 S.Ct. 738 (2005), the district court, Judge Rudy Lozano, adopted without objection the factual statements in the presentence report. The judge also heard testimony from an FBI agent and a postal inspector concerning the particularly aggravated content of the child pornography images at issue in this case, which the judge characterized as the

most shocking he had seen in sixteen years on the bench. The images of sadistic sexual acts included images of children under the age of ten being tied up and forced to have oral, genital, and anal sex with adult males. The images of bestiality depicted young children, sometimes bound, engaging in acts of intercourse and oral sex with dogs.

The FBI agent, who had four years' experience investigating child pornography, testified that only once before had he encountered images of bestiality involving children. Drawing on institutional knowledge, the agent also testified that he spoke with a customs agent and another FBI agent—experienced investigators of this sort of crime—both of whom estimated that less than one percent of child pornography investigations involve bestiality. The postal inspector, who had specialized for nine years in crimes involving the exploitation of children, had seen bestiality before but never involving children under age twelve. Nor had anyone in his office encountered bestiality involving such young children.

Judge Lozano also received testimony from the mother of the child who was videotaped while in the shower. Her testimony and other evidence established that Johnson's live-in girlfriend was a day-care provider, and the child Johnson videotaped was a neighbor child in his girlfriend's care.

Judge Lozano calculated the guidelines sentencing range as follows: applying the version of U.S.S.G. § 2G2.2 in effect at the time Johnson committed the offenses, the judge started with a base offense level of 17. Then, following the probation officer's recommendation, the court added two levels because the child pornography at issue involved minors under age twelve, § 2G2.2(b)(1); five levels because Johnson distributed child pornography, § 2G2.2(b)(2)(B); two levels because Johnson used a computer, § 2G2.2(b)(5);

and four more because of the sadistic images involving children, § 2G2.2(b)(3) (renumbered as § 2G2.2(b)(4) effective November 1, 2004). These adjustments, after a decrease of three levels for acceptance of responsibility, § 3E1.1, yielded an offense level of 27, which, when combined with Johnson's criminal history category of I, resulted in a guidelines sentencing range of 70 to 87 months' imprisonment.

But Judge Lozano nearly tripled the high end of the guidelines range, calculating a "departure range" of 210 to 262 months and ultimately imposing a total sentence of 236 months' imprisonment—180 months on each count to be served consecutively to the extent necessary to arrive at the total term of 236 months. The judge gave three basic reasons for imposing this sentence above the guidelines range. First, the judge added the equivalent of four levels to account for Johnson's possession of 42 images of children engaged in bestiality. The judge concluded that bestiality, especially involving children so young, constituted a substantial aggravating factor not adequately considered by the Sentencing Commission.

Second, the judge added another five levels (bringing the effective offense level to 36) to account for the number of images in Johnson's possession: 4,638. Judge Lozano explained that he was taking into consideration a later-enacted amendment to § 2G2.2 under which Johnson would have received an equivalent adjustment for possessing 600 or more images. *See* U.S.S.G. § 2G2.2(b)(7)(D); *id.* app. C, amend. 649 (effective Apr. 30, 2003). Since Johnson stood convicted of possessing more than *seven times* as many images, the court reasoned that departing upward by reference to this amendment was appropriate.

Third, the court concluded that Johnson's criminal history category of I did not accurately reflect his past criminal conduct nor the likelihood that he would commit other crimes in the future. By his own admission, Johnson

committed the offense of voyeurism under IND. CODE § 35-
45-4-5 (a Class D felony under Indiana law) by videotap-
ing the child in the shower, even though he was never
charged with that crime. Because this was a crime punish-
able by more than a year and a month in prison, the judge
deemed it appropriate to elevate Johnson's criminal history
category from I to II. *See* U.S.S.G. § 4A1.3.

Beyond articulating these three basic grounds for exceed-
ing the guidelines range, Judge Lozano also commented at
length on the additional factors that influenced his sentenc-
ing decision. He repeatedly addressed the particularly
aggravated content of the images at issue in this
case—especially those depicting bestiality—which he
characterized as "vile" and "completely appalling." He noted
Johnson's abuse of the baby-sitting situation in connection
with the videotape incident, reasoning that this made
Johnson more likely to commit crimes involving child
pornography again and perhaps to progress to even more
serious sex crimes against children. The judge explained
that he settled on 236 months because he thought a sen-
tence of that length was necessary to send a strong message
of deterrence and permit enough time for Johnson's rehabil-
itation. The court took into account Johnson's age and
health, his degree of remorse (which the judge found
lacking), his propensity toward recidivism, and "the Court's
duty to society." Judge Lozano emphasized that he "did not
come to this decision lightly, nor was it an easy issue to
decide." The judge explained: "I have considered all of the
facts in this case, Mr. Johnson, and I have considered what
would be a fair sentence. I have considered very strongly
what, hopefully, would send a message to other individuals
who are thinking about these types of crimes, that this is off
limits. Our children are off limits, and this Court will
protect them at all costs."

## II. Discussion

On appeal Johnson argues that the district court erred by making "three departures" based on the images of bestiality, the overall number of images, and the videotape of the showering child. He also argues that the judge violated his Sixth Amendment rights by sentencing him under the formerly mandatory guidelines regime. *See Booker*, 125 S.Ct. at 756.

Johnson's framing of the issue as one about "departures" has been rendered obsolete by our recent decisions applying *Booker*. It is now clear that after *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the "departures" as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory. *United States v. Castro-Juarez,* No. 05-1195, 2005 WL 2417065, at *3 (7th Cir. Oct. 3, 2005) (the question . . . is ultimately the reasonableness of the sentence the district court imposed, not the court's application of a guideline authorizing an upward depature"). Now, instead of employing the pre-*Booker* terminology of departures, we have moved toward characterizing sentences as either fitting within the advisory guidelines range or not. *See United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

Johnson does not dispute the facts used to arrive at the guidelines range, nor does he argue that the guidelines range was improperly calculated. *See id.* ("The judge must . . . compute the guidelines sentence, just as he had to do before *Booker*."). A sentence within a properly calculated guidelines range is presumptively reasonable. *United States v. Bryant*, 420 F.3d 652, 658 (7th Cir. 2005); *United States v. Re*, 419 F.3d 582, 583 (7th Cir. 2005); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Sentences varying from the guidelines range, as this one does, are reasonable so long as the judge offers appropriate justifica-

tion under the factors specified in 18 U.S.C. § 3553(a). *Dean*, 414 F.3d at 729. How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed. *Id.* Relevant factors may include the defendant's history, the nature and seriousness of the crime, just punishment, deterrence, protection of the public from the defendant's future crimes, and the defendant's correctional needs. 18 U.S.C. § 3553(a); *Dean*, 414 F.3d at 728. Explicit factfinding on the factors influencing a decision to exceed the guidelines range is not required, except where a particular fact is contested and "may be decisive to the choice of sentence." *Dean,* 414 F.3d at 730. Johnson does not contest the facts underlying the court's decision to move up from the guidelines range here.

Once the issue is properly framed in terms of "reasonableness," we are hard-pressed to say that Johnson's sentence does not meet the standard in terms of the bottom line. Johnson's sentence is substantially longer than the guidelines range as calculated by reference to § 2G2.2 as it existed when he committed his crimes, but that would not be true if he engaged in the identical conduct today. Viewing the *current* version of § 2G2.2 as one benchmark to gauge the reasonableness of Johnson's sentence, *cf. United States v. Coe*, 220 F.3d 573, 578 (7th Cir. 2000); *United States v. Porter*, 145 F.3d 897, 907 (7th Cir. 1998); *United States v. Willey*, 985 F.2d 1342, 1350 (7th Cir. 1993), the sentence Johnson received would fall *within* the advisory guidelines range instead of substantially above it. After Johnson committed his crimes, § 2G2.2 was twice amended to reflect the judgment of Congress that trafficking in child pornography was being punished too lightly. *See* The Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650 (Apr. 30, 2003); U.S.S.G. app. C, amend. 649 (effective Apr. 30, 2003); *id.* amend. 664

(effective Nov. 1, 2004). As amended, § 2G2.2 now sets the base offense level at 22. U.S.S.G. § 2G2.2(a)(2) (2004). Two levels would be added because children under twelve are depicted, § 2G2.2(b)(2); another five levels for distribution, § 2G2.2(b)(3)(B); four more for sadistic or masochistic images, § 2G2.2(b)(4); two for using a computer, § 2G2.2(b)(6); and, finally, five more levels because there were more than 600 images. *See* U.S.S.G § 2G2.2(b)(7)(D) (2004). Even dropping three levels for acceptance of responsibility, the resulting total offense level of 37 coupled with a criminal history category of I would yield a range of 210 to 262 months. The comparison is irresistible: if handed down today, Johnson's 236-month sentence would be right in the middle of the advisory range and thus presumptively reasonable. *See Bryant*, 420 F.3d at 658; *Re*, 419 F.3d at 583; *Mykytiuk*, 415 F.3d at 608.

That aside, focusing exclusively on the reasons the district court gave for imposing the 236-month term of imprisonment, we are persuaded that a sentence of this length was amply justified. First, the court reasoned that Johnson's case is particularly egregious because he possessed 42 shocking images of children engaged in bestiality. Johnson objects to this rationale, arguing that the court had already accounted for the images of bestiality by applying the upward adjustment under § 2G2.2(b)(3) (now subsection (b)(4)), for child pornography depicting "sadistic or masochistic conduct or other depictions of violence." Johnson contends that images involving both kinds of conduct—sadism and bestiality—are covered by the adjustment. He notes that sadism in this context requires neither violence nor the infliction of physical pain but simply the infliction of severe and degrading harm on the child. *See United States v. Turchen*, 187 F.3d 735, 739-40 (7th Cir. 1999) (defining sadism to include conduct that inflicts emotional as well as physical pain). Conceding that the images of bestiality in his possession involved harm

degrading and severe enough to be considered sadistic, Johnson argues from this concession that it was improper for the district court to further increase his sentence based upon the depictions of bestiality when it had already done so because they satisfied the definition of sadism.

We need not attempt to draw a clear distinction between the two kinds of conduct here. Even if § 2G2.2(b)(4) is construed to include images of bestiality, there is no reason why the court, in deciding whether to impose a sentence above the advisory range, could not give further weight to a factor covered by a specific guidelines adjustment, especially where (as is true here) that "factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996). In some instances child pornography fitting the general category covered by § 2G2.2(b)(4) is so aggravating as to justify going above the advisory range. *See United States v. Griffith*, 344 F.3d 714, 718-20 (7th Cir. 2003) (explaining that the particularly horrific nature of defendant's images justified a sentence above guidelines range). That was the judge's reasoning here, and we cannot disagree with it.

Attacking the court's second reason for increasing the sentence—the number of images in his possession—Johnson concedes that the district court correctly decided that possessing so many illicit pictures warranted a longer sentence, but insists that the district court increased his sentence by too much. We are not persuaded. Astonished by Johnson's accumulation of thousands of images in just a few months, the judge explained that Johnson's rapid, deep fall into child pornography was "almost beyond belief, and certainly far from typical." Judge Lozano looked to a subsequent amendment—now § 2G2.2(b)(7)(D), for cases involving 600 or more images—to guide his discretion in increasing the sentence. *See* U.S.S.G. app. C, amend. 649 (effective Apr. 30, 2003). Using a later-

enacted guidelines amendment as a tool to guide sentencing discretion is appropriate. *Coe*, 220 F.3d at 578; *Porter*, 145 F.3d at 907.

The district court's third reason for increasing the sentence was Johnson's videotaping of the little girl in the shower. Johnson argues that the district court had no authority to increase his sentence based on this reason. We disagree. Johnson admitted during the plea colloquy that he secretly videotaped the child, and he concedes that this conduct could have been prosecuted under Indiana law as voyeurism, *see* IND. CODE § 35-45-4-5 (voyeurism), which at the time of the offense carried a *presumptive* penalty of 18 months in prison, *see id.* § 35-50-2-7(a); *Dixon v. State*, 825 N.E.2d 1269, 1271-72 (Ind. Ct. App. 2005). Even under the old sentencing regime, U.S.S.G. § 4A1.3 permitted district courts to impose a higher sentence after considering, among other things, all "prior similar adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(e) (redesignated § 4A1.3(a) (2)(E)); *United States v. Terry*, 930 F.2d 542, 545 (7th Cir. 1991). Moreover, the district court explained that Johnson's abuse of the baby-sitting situation increased the likelihood that Johnson would reoffend and perhaps escalate to even more serious sexual abuse of children. This assessment was entirely reasonable.

Accordingly, although Johnson's sentence is much longer than the guidelines range applicable at the time of sentencing, the district court's justification is commensurate to the difference between the sentence imposed and the advisory range. The judge's conclusions regarding the particular nature of the pornographic images, the sheer quantity of child pornography, and Johnson's risk of recidivism were appropriately related to the factors specified in §3553(a). *See Dean*, 414 F.3d at 728. The district court's stated justification adequately supports the sentence imposed. *Id.* at 729.

As a fallback position, Johnson argues for the first time on appeal that imposing this sentence under the formerly mandatory regime is error that requires resentencing. *See Booker*, 125 S.Ct. at 756. Although it was error to apply the guidelines as mandatory, *see id.*; *United States v. Cunningham*, 405 F.3d 497, 504-05 (7th Cir. 2005), Johnson failed to preserve the error by raising a constitutional objection below, *see Paladino*, 401 F.3d at 481-84. Accordingly, our review is for plain error. Under the plain error standard, we will order resentencing only if applying the guidelines as mandatory worked to the defendant's disadvantage, that is, if the sentencing court would have imposed a lower sentence had it realized that the guidelines were advisory. *Id.* at 482-83. If we are in doubt about whether the district court would have done so, we will remand for the limited purpose of asking. *Id.* at 483-84. But only if we are in doubt. *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). In *Lee* we observed that when a sentencing judge departs upward from what was believed to be a mandatory guidelines range, it is unlikely the judge would have lowered the sentence had he known that after *Booker* he would have even more freedom to fashion an appropriate sentence. *Id.* at 867; *see also United States v. Stewart*, 411 F.3d 825, 829 (7th Cir. 2005); *Cunningham*, 405 F.3d at 504-05; *Lee*, 399 F.3d at 866. Of course, there are exceptions; we have also stated that *"Lee* did not . . . establish a *per se* rule that plain error is impossible if the district court departed upwards." *United States v. Long,* No. 04-1721, 2005 WL 2465006, at *5 (7th Cir. Oct. 7, 2005). Here, Judge Lozano explained his decision so thoroughly that we are confident he would not lower the sentence in this case. A limited remand under *Paladino* is not necessary. *See Lee*, 399 F.3d at 866-67.

Because the sentence imposed was reasonable and we see no reason for a *Paladino* remand, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                                 _____

                              *Clerk of the United States Court of*
                                  *Appeals for the Seventh Circuit*