In the

# United States Court of Appeals

### For the Seventh Circuit

No. 04-1953

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE HARRISON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 1101—**Suzanne B. Conlon**, *Judge.*

ARGUED FEBRUARY 23, 2005—DECIDED DECEMBER 12, 2005

Before CUDAHY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Maurice Harrison was convicted by a jury of one count of distributing 50 or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). The district judge sentenced Harrison to 151 months' imprisonment. Harrison contends that the district court abused its discretion by sustaining various government objections to the defendant's testimony at trial. We disagree and find that the district court properly sustained the government's objections, the majority of which were based on relevance and leading grounds. We reject Harrison's argument that the district court erroneously found that he made materially false statements at trial and obstructed

justice, because the evidence supports the district court's conclusion that he had dealt drugs before. The evidence also supports the district court's finding that Harrison lied when he testified at trial that the government's informant had solicited him for drugs prior to the first charged drug sale. For these same reasons, we also reject Harrison's argument that he should have received a two-level downward adjustment for acceptance of responsibility and safety valve relief. Although we affirm the conviction, we order a limited remand for further proceedings on Harrison's sentence under the procedure established in *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005).

## I. BACKGROUND

On November 19, 2003, a grand jury in the Northern District of Illinois returned an indictment against Maurice Harrison. Count One of the indictment alleged that on July 17, 2002, Harrison distributed 50 or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Count Two alleged that on August 15, 2002, Harrison again distributed 50 or more grams of crack cocaine in violation of the same statute.

The case was tried before a jury. At trial, Harrison and the government stipulated to the following facts. First, the parties agreed that on July 17th and August 15th, 2002, in the area of 5424 Cornell in Chicago, Harrison distributed 63.4 and 62.3 grams of crack cocaine, respectively, to the government's informant, Christopher Lyons. The parties agreed that Harrison received $1,500 on each occasion. The parties also stipulated that Harrison knew that the substance he distributed to Lyons was crack cocaine. The parties also agreed that Harrison used a cellular telephone to complete these sales, and phone records were admitted into evidence showing that the telephone number was registered in the name of another individual.

In the government's case in chief, it called three agents from the Drug Enforcement Agency (DEA).[1] The agents testified that Lyons identified Harrison to them as a drug dealer. As a result, the DEA attempted to set up controlled drug buys using Lyons as the buyer. The agents testified that on July 17th and August 15th, the DEA conducted controlled purchases of crack cocaine through Lyons. According to the agents' testimony, the first transaction was set up by a phone call from Lyons to Harrison. The district court admitted into evidence telephone records showing calls made from Lyons to Harrison. The district court also admitted into evidence certain recorded conversations between Harrison and Lyons to set up the drug transactions. These conversations were played at trial, and the transcripts of these conversations were also admitted into evidence. The DEA agents followed Harrison after the July 17th transaction to a Bank One branch, where they observed him depositing money. The DEA agents also testified that the only time they set up a plan to buy drugs from Harrison was on July 17th. The phone records admitted into evidence show that the next phone call between Lyons and Harrison after the July 17th transaction did not occur until July 25th, when Harrison called Lyons to set up another purchase.

Harrison presented an entrapment defense and was the sole witness to testify on his behalf. Harrison testified that he made his living as a painter and had never sold drugs before. Harrison testified that he had known Lyons since childhood, and that they grew up in the same neighborhood. According to Harrison's testimony, prior to the July 17th transaction, he had several conversations with Lyons. In the first two conversations, Lyons asked Harrison for drugs which Lyons said he needed to pay off a debt, and Harrison said "no." Harrison testified that he

---

[1]   The government's informant, Christopher Lyons, did not testify.

had a third and fourth conversation with Lyons, where Lyons again asked for drugs. Again, according to Harrison, Lyons stated that he needed these drugs to pay off a street gang, and once again, according to Harrison, he told Lyons "no." Harrison testified that in a fifth conversation Harrison said that he knew Collins Goodson, a supposed drug dealer in the neighborhood. Harrison told Lyons that Goodson, known as "Sonny", would not sell drugs directly to Lyons but would sell the drugs to Harrison. With that understanding, according to Harrison, he and Lyons arranged the first sale on July 17th. According to Harrison, he did not get any money from the two deals but rather gave the proceeds from the transactions to Sonny. Harrison also testified that the $700 he deposited in his Bank One account after the July 17th transaction was cash he received from a painting job and not from the drug sale. He also recounted that after the first deal, he spoke with Lyons, who said that the street gang that he was indebted to liked the drugs he gave them and wanted more. Harrison testified that he initially refused to give Lyons more drugs, but decided to do so out of fear for Lyons's safety.

In rebuttal, the government called David Irving. Irving testified that he knew Harrison and had purchased crack cocaine from him five times, in 63 gram quantities, prior to 2003. Irving said that he stopped talking to Harrison after they had arranged to buy half a kilogram of cocaine together and Harrison took the money and never provided the drugs.

At the conclusion of the trial, the jury acquitted Harrison of Count One, but convicted him of Count Two. At sentencing, the district judge imposed a two-level upward adjustment for obstruction of justice. In doing so, it determined that Harrison willfully provided materially false testimony when he denied having sold drugs prior to the two controlled purchases. The district court found Harrison's testimony to be false based on the slang that Harrison

used, and was familiar with, in conducting the drug sales.[2] The district court also found that the speed with which Harrison was able to secure a large amount of crack cocaine was indicative of prior dealings. Finally, the district court also found that Harrison willfully provided false testimony when he testified that he had been solicited repeatedly by Lyons before engaging in the first charged drug sale. Based on the district court's finding that Harrison had obstructed justice, it refused to grant Harrison a two-level downward adjustment for acceptance of responsibility, and denied Harrison's request for safety valve relief under 18 U.S.C. § 3553(f). The district court then sentenced Harrison to 151 months of imprisonment. Harrison appeals his conviction and sentence.

## II. ANALYSIS

### A. The Government's Objections During Harrison's Direct Testimony

We find that the district court did not abuse its discretion in sustaining the government's objections during Harrison's testimony. In reviewing a district court's evidentiary rulings, our review is for an abuse of discretion. *United States v. Hernandez-Rivas*, 348 F.3d 595, 599-600 (7th Cir. 2003). We will reverse an error only if it had "a substantial influence over the jury." *Id.* (quoting *United States v. Smith*, 230 F.3d 300, 307 (7th Cir. 2000).

---

[2] Specifically, the district court found the testimony to be:

willful and materially false based on the quick turn-around time for setting up the deal [and] the actual language used in negotiating the sale. The statements by Mr. Harrison during the conversation certainly weren't those of a neophyte in the drug business. It was sophisticated. He knew exactly what he wanted and how it was to be done.

Harrison's main argument is that the government so disrupted the flow of his direct testimony, through its objections, as to hinder the presentation of his entrapment defense before the jury. We find that Harrison's argument is without merit. Harrison does not cite any authority for his claim that the sheer number of objections can so disrupt the flow of a direct examination of a defendant that it rises to the level of deprivation of the right to present a defense. Indeed, no such rule exists. Harrison's direct examination consisted of approximately 41 typewritten pages, during which his counsel asked him roughly 350 questions. The government objected to approximately 18 of those questions. Most of the government's objections were based on relevance and leading grounds, and the district court sustained the majority of these objections. What Harrison is asking of us, in essence, is to create some type of quota system by which the government (or any other party) is limited to a certain number of objections during the direct examination of a witness. There is no foundation for such a rule in the Federal Rules of Evidence or any case law.

## B.  The District Court's Finding that Harrison Obstructed Justice at Trial

We also find that the district court did not clearly err in its finding that Harrison obstructed justice at trial. A district court's determination that a defendant obstructed justice is a finding of fact which we review for clear error. *United States v. Hanhardt*, 361 F.3d 382, 387 (7th Cir. 2004). The district court may apply an enhancement for obstruction of justice if the defendant testifies at trial and commits perjury. U.S.S.G. § 3C1.1, cmt. n. 2 & 4 (2004); *United States v. Griffin*, 310 F.3d 1017, 1023 (7th Cir. 2002). Moreover, "separate findings of fact regarding each element of perjury are not strictly necessary to uphold an obstruction of justice enhancement" but "[a]s long as the

trial court determined that the defendant lied to the judge and jury about matters crucial to the question of defendant's guilt, that is sufficient." *United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002).

In this case, the district court made a finding that Harrison obstructed justice based on two assertions he made in his testimony: that he had never dealt drugs before; and that he had been solicited repeatedly by Lyons before engaging in the first charged drug sale. At sentencing, the district court found that "The statements by Mr. Harrison during the [conversations between Harrison and Lyons] certainly weren't those of a neophyte in the drug business. It was sophisticated. He knew exactly what he wanted and how it was to be done." The district court described Harrison as "sophisticated" and unlike a neophyte, which we infer as meaning that based on Harrison's knowledge of drug lingo, he had dealt them in the past.[3] We

---

[3] In a conversation between Harrison and Lyons on July 17, 2002 at 3:12 pm, the parties said the following:

> Harrison: What's happening?
>
> Lyons: Man huh. I don't want to talk on the phone like this but I'm trying to go to 63rd. What what them people gonna charge me for that car?
>
> Harrison: Um. Which way?
>
> Lyons: 63rd. Good, the real one. Hard.
>
> Harrison: I think the umm the (inaudible) the Cadillac is just gonna be $15.00.

In another conversation between Harrison and Lyons on July 17th, the parties said:

> Harrison: What the fuck (inaudible) yeah I, I done called you four or five times, it was what

(continued...)

disagree with the district court's logic here. Sadly, across many drug plagued neighborhoods in Chicago and nationwide, many law-abiding people know drug slang because drugs are so pervasive in their communities. Even in communities where drug dealing is not rampant, many law-abiding citizens are familiar with drug slang through music and other forms of media. As Harrison notes, the use of drug slang has become so pervasive that the White House has a web page defining various lingo for the benefit of parents and teachers to monitor their youngsters.[4] On this web page is the meaning of "Cadillac" and "butter."

Although we disagree with the district court's logic that because Harrison was fluent in drug slang, he must have dealt drugs in the past, we do not find clearly erroneous the district court's conclusion that Harrison obstructed justice. In particular, it was not clear error for the district court to find that Harrison lied about dealing drugs before because he was able to receive such a large quantity of crack cocaine on "credit" from a drug dealer. While it may be very easy for anyone to buy user quantities of drugs in neighborhoods where they are sold, it is another matter to approach a drug dealer and ask to be fronted two ounces of crack, worth $1,500, as Harrison did. According to Harrison, he did not pay his supplier for drugs until after he had delivered them

---

[3]  (...continued)

Lyons: What's this dog? Is it butter man?

Harrison: This bitch just got out of the warmer.

The parties do not disagree that "trying to go 63rd" is drug slang for a transaction involving 63 grams, "Cadillac" or "car" refers to cocaine, and "hard" and "butter" mean crack cocaine.

[4]  The White House, Office of National Drug Control Policy,"Street Terms: Drugs and the Drug Trade", www.whitehousedrugpolicy.gov/streetterms (last visited Aug. 15, 2005).

to Lyons and was paid by Lyons. Based on all of the evidence presented by the government at trial, including the rebuttal evidence of David Irving, who claimed that Harrison had sold him crack before, it was not clear error for the district court to conclude that Harrison had previously sold drugs. Based on the same facts, we also do not find it clear error for the district court to have made a finding, based on Harrison's credibility, that he perjured himself on the stand by testifying that he had been solicited repeatedly by Lyons prior to the first drug sale. With the exception of Harrison's knowledge of drug slang, we consider all of this evidence sufficient to describe a "failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

## C. The District Court's Finding that Harrison Did Not Qualify for Acceptance of Responsibility

We also find that the district court did not clearly err by finding that Harrison did not qualify for a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1 (2004). U.S.S.G. 3E1.1 provides for a reduction in offense level if "the defendant clearly demonstrates acceptance of responsibility for his offense." *Id.* We review the district court's finding of whether a defendant has accepted responsibility for his criminal activity for clear error. *United States v. Taliaferro*, 211 F.3d 412, 414 (7th Cir. 2000).

We have held that section 3E1.1 of the sentencing guidelines (which is now advisory after *Booker*) is designed to reward a defendant who demonstrates contrition through an honest and full account of his offense conduct. *United States v. Larkin*, 171 F.3d 556, 559 n.4 (7th Cir. 1999). Furthermore, the sentencing court can require that the

defendant provide a candid and full explanation of the circumstances surrounding the offense of conviction. *United States v. Hammick*, 36 F.3d 594, 600-01 (7th Cir. 1994). We have determined that the district court did not clearly err by its finding that Harrison lied to the jury about two issues crucial to the question of his guilt: first, that he had never dealt drugs before; second, that he had been solicited repeatedly by Lyons before engaging in the first charged drug sale. As such, it was not clear error for the district court to determine that Harrison did not give a full and honest account of both his conduct in the offense and the circumstances surrounding the offense. Therefore, we find that the district court did not commit clear error when it found that Harrison did not qualify for an acceptance of responsibility adjustment.

## D. The District Court's Refusal to Apply the Safety Valve Adjustment

We also find that the district court did not clearly err by its refusal to apply the safety valve adjustment in this case. The safety valve provision of the Guidelines advises a district court to depart below the statutory mandatory minimum sentence for certain drug offenses where the defendant is a first time offender who was not the organizer or leader of criminal activity and has made a good faith effort to cooperate with the government. U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f)(1)-(5). Our review of the district court's findings about the factual predicates for the safety valve is for clear error only. *See United States v. Williams*, 202 F.3d 959, 964 (7th Cir. 2000). From that standpoint, we see nothing to criticize the district court's decision to refuse Harrison the safety valve adjustment, and no clear error in the district court's finding that Harrison lied to the jury through his testimony. Harrison failed to "truthfully provide [ ] to the Government all information and evidence

defendant has concerning the offense." U.S.S.G. § 5C1.2 (2004).

### E. *Booker* and the District Judge's Sentencing Determinations

Harrison also argues that the district court erred in sentencing him in violation of the Sixth Amendment when the district court, and not a jury, made its finding that Harrison had obstructed justice. The Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), does not preclude a sentencing judge from making factual findings that have the effect of increasing the Guidelines sentencing range, but it does render the Guidelines advisory in order to avoid the constitutional problem that mandatory application of the Guidelines otherwise would present. *See id.* at 750.

Because Harrison did not raise his Sixth Amendment objection in the district court, we review for plain error. Enhancement of Harrison's sentence based on facts not admitted by the defendant or proven to a jury beyond reasonable doubt does, under the new *Booker* regime, constitute error that is plain. *See United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005).

The question that we must ask now is whether Harrison's substantial rights were affected by the error. *See* Fed. R. Crim P. 52(b); *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). We cannot answer that question without knowing whether the district court would have been inclined to sentence Harrison more leniently had it known that the Guidelines were advisory rather than mandatory. *Paladino*, 401 F.3d at 482. The district court sentenced Harrison to the low end of the then-mandatory Guideline range, so the possibility that the district judge may consider another sentence for Harrison is entirely logical. Therefore, we will retain jurisdiction of the appeal and "order a limited

remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at 484. On remand, the district court should proceed with the procedure we set forth in *Paladino*. If the district court determines that it would have imposed the same sentence, we may know for certain that Harrison was not prejudiced. Without a showing of prejudice, Harrison's plain error challenge will fail. We will still, however, review the sentence for reasonableness. *Id.* If the district judge determines that with more discretion, the sentence would have been lower, we will vacate and remand the case for resentencing having predetermined that such an illegal sentence that has prejudiced the defendant constitutes a miscarriage of justice. *Id.*

### III. CONCLUSION

For the reasons stated above, we AFFIRM Harrison's conviction. While retaining jurisdiction, we order a limited REMAND of Harrison's sentence in accordance with *Booker*, *Paladino*, and this opinion. The district court is directed to return this case to us when the limited remand has been completed.

No. 04-1953                                                    13

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*