In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-3920

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTURO OROZCO-VASQUEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 87—**Rudolph T. Randa**, *Chief Judge.*

ARGUED MAY 5, 2006—DECIDED DECEMBER 5, 2006

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Arturo Orozco-Vasquez pleaded guilty to being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) and illegal reentry in violation of 8 U.S.C. § 1326(a), and then went to trial on a third charge of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The jury found him guilty and the chief district judge sentenced him to a prison term of 120 months (concurrent with terms of 63 and 24 months on the gun and illegal reentry counts). This was 42 months more than the high end of the advisory sentencing guidelines range of 63-78 months. Orozco-Vasquez appeals his conviction and sentence. He claims there was insufficient

evidence to convict him and that the chief judge made erroneous factual findings that led to an unreasonable sentence.

We affirm. The evidence against Orozco-Vasquez on the drug count was plentiful and strong, easily enough to support the conviction. We also have no difficulty concluding that Orozco-Vasquez's above-guidelines sentence is reasonable. To the extent that Orozco-Vasquez attacks the fact-finding underlying the chief judge's upward variance, the effort is misplaced. There is a difference between formal factual findings and judicial observations that explain conclusions about sentencing factors, and Orozco-Vasquez has confused the two.

## I. Background

Late one November night in 2004, several Milwaukee police officers went to a duplex on the south side of the city acting on a tip that Orozco-Vasquez—wanted on an outstanding warrant for failing to report for a prior sentence—was in the house. Officer Todd Bohlen knocked on the back door of the duplex. Fernando Campos-Ruiz (who became a codefendant in this case) came out onto a porch off the upstairs unit and asked who was knocking. When the police identified themselves, Campos-Ruiz went back inside. Moments later a young girl from the downstairs unit let the officers into the common hallway and directed them to the upstairs unit. Some officers waited outside the duplex, taking up positions around the property. As Bohlen and his partner climbed the stairs to the upper unit, officers outside shouted that items were being thrown from the upper unit. Those items, it turns out, were 250-gram balls of cocaine. Bohlen knocked on the door of the upper apartment, announcing his presence forcefully. He heard people scrambling around inside and the sound of a heavy object

being dropped. After calling for backup, Bohlen made a forced entry.

Bohlen entered the apartment and heard the sound of "[w]ater blasting out of a tub faucet." Orozco-Vasquez emerged from the bathroom with his hands up, soaking wet and fully dressed. He left the tub faucet on, blasting hot water, with the drain open. Bohlen immediately noticed the strong odor of cocaine in the bathroom. In a bedroom directly across the hall from the bathroom, officers found an electronic scale, a knife with cocaine residue, two bottles of inositol (a cocaine cutting agent), a roll of plastic wrap, a box of dryer sheets, a roll of gray duct tape, and a ball of cocaine wrapped in duct tape. Orozco-Vasquez's fingerprints were found on the scale and one of the bottles of inositol. From outside the duplex, officers recovered three balls of cocaine, all wrapped in either duct tape or masking tape, and one wrapped with a dryer sheet under the tape. The cocaine in all three packages was cut with 50-60% inositol. Officers also found cocaine in the kitchen and a cocaine press designed to press ½- or 1-kilogram bricks of cocaine in the attic. In all, police recovered at least four packages of cocaine weighing 250 grams each.

Based on the foregoing evidence, the jury convicted Orozco-Vasquez on the drug count (as we have noted, he entered guilty pleas to being an illegal alien in possession of a firearm and illegal reentry after removal). The sentencing guidelines recommended a sentence of 63-78 months, but Chief Judge Randa did not think that sentence long enough. The chief judge explicitly considered several of the factors in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for deterrence and protection of the public.

The chief judge rejected Orozco-Vasquez's claim that he was an innocent bystander in a drug house rather than a large-scale drug dealer and long-standing member of the

Mexican Posse street gang, as the government maintained. Beyond the trial evidence and the jury's verdict, the chief judge pointed to the government's presentation at sentencing of earlier, unrelated wiretapped conversations in which Orozco-Vasquez is heard using language the judge recognized as coded drug trafficking lingo. The chief judge also entered what he characterized as "a finding" that "the drugs that Mr. Campos-Ruiz saw you take into the bathroom [were] . . . flushed down the bathtub." This was a reference to a statement in the Presentence Report that Campos-Ruiz reported seeing Orozco-Vasquez enter the bathroom and come out soaking wet.

Chief Judge Randa also rejected Orozco-Vasquez's claim that he left the Mexican Posse in 1997, citing Orozco-Vasquez's concealed weapons arrest in 2000 while he was in the company of two members of the Mexican Posse, as well as several photographs in which Orozco-Vasquez is seen flashing gang signs with several other members of the Mexican Posse as late as 2003. The chief judge was likewise skeptical about Orozco-Vasquez's explanation of an injury he sustained in 1997 when he was shot in the head. According to Orozco-Vasquez, his neighbor stole his car, and when Orozco-Vasquez went after the neighbor, he was shot in the head. Based on Orozco-Vasquez's acknowledged Mexican Posse membership in 1997, the chief judge thought it more likely that Orozco-Vasquez was shot in the head as a result of some gang-related activity.

Overall, the chief judge's impression was that Orozco-Vasquez was a "deceiver," a "liar," and a "scofflaw," and he doubted that anything Orozco-Vasquez said could be believed. The chief judge cited Orozco-Vasquez's use of an alias to elude law enforcement as evidence of his deceptive nature. He also noted Orozco-Vasquez's history of illegal reentries into this country using a false name and the fact that Orozco-Vasquez has violated the law several times and failed to report for a six-month work-

release sentence on the state concealed weapons offense (this was the warrant that brought the police to the duplex looking for Orozco-Vasquez).

The chief judge also discussed the need for the sentence to promote respect for the law, protect the public, and deter Orozco-Vasquez from breaking the law again. Because of his pattern of illegal entries into this country, efforts to elude law enforcement by use of an alias, repeated crimes, and failure to report for the prior work-release sentence, Chief Judge Randa concluded that the law has had little deterrent effect on Orozco-Vasquez. Based on the foregoing, the chief judge stated that a short sentence followed by deportation presented too great a risk that Orozco-Vasquez would again illegally reenter and resume drug dealing. The chief judge sentenced Orozco-Vasquez to 120 months in prison on the drug count and concurrent terms of 63 and 24 months, respectively, on the gun and illegal reentry counts.

## II. Discussion

### A. Sufficiency of the Evidence

Orozco-Vasquez argues there was insufficient evidence to find him guilty beyond a reasonable doubt of possession with intent to deliver over 500 grams of cocaine. Insufficiency of the evidence arguments are hard to win. *See, e.g.*, *United States v. Moore*, 425 F.3d 1061, 1072 (7th Cir. 2005) (calling the hurdle "'nearly insurmountable'" (quoting *United States v. Frazier*, 213 F.3d 409, 416 (7th Cir. 2000)). We do not weigh the evidence or assess the credibility of witnesses. Instead, we view the evidence in a light most favorable to the government and reverse only when there is no evidence, no matter how it is weighed, from which a rational jury could find guilt beyond a reasonable doubt. *United States v. Johnson*, 437 F.3d 665, 674 (7th Cir. 2006).

To convict Orozco-Vasquez under 21 U.S.C. § 841(a)(1), the government had to prove that he "(1) knowingly or intentionally possessed cocaine (2) with the intent to distribute it (3) while knowing it was a controlled substance." *United States v. Starks*, 309 F.3d 1017, 1022 (7th Cir. 2002). Orozco-Vasquez challenges only whether he possessed cocaine, arguing that the evidence does not support the jury's verdict that he did. He maintains that since the government did not catch him cocaine-in-hand, it has not established possession.

The government need not show actual possession to convict Orozco-Vasquez; constructive possession will suffice. *Id.* The government can prove constructive possession by showing Orozco-Vasquez had the authority to possess and determine the disposition of the drugs. *United States v. Harris*, 325 F.3d 865, 869 (7th Cir. 2003); *Starks*, 309 F.3d at 1022. Constructive possession need not be exclusive so long as there is a nexus between the defendant and the drugs. *Harris*, 325 F.3d at 869.

The government introduced sufficient evidence from which a rational jury could find possession. The police caught Orozco-Vasquez very nearly red-handed. As Officer Bohlen entered the apartment, Orozco-Vasquez emerged from the bathroom fully dressed but soaking wet. The drain on the tub was wide open, and hot water remained running as Orozco-Vasquez came out. Officer Bohlen described the strong odor of cocaine in the bathroom. Bohlen also testified that in his experience as a narcotics officer, suspects often try to flush cocaine down drains with hot water because hot water dissolves cocaine faster than cold.

The apartment was littered with trappings of the cocaine trade. Police found an electronic scale and a bottle of inositol bearing Orozco-Vasquez's fingerprints. Near those items police recovered a knife with cocaine residue on it, a roll of plastic wrap, a roll of gray duct tape, a box of

dryer sheets (used to suppress the smell of wrapped cocaine), and a ball of cocaine wrapped in gray duct tape. In the attic of the apartment, police found a cocaine press designed to press ½- and 1-kilogram bricks of cocaine.

Officers also recovered three balls of cocaine they witnessed being thrown from the windows of the apartment when they arrived—two wrapped in gray duct tape. All three balls of cocaine weighed about 250 grams and contained 50-60% inositol; at least one of the balls of cocaine was lined with a dryer sheet. Taken with its reasonable inferences, this evidence is sufficient for a jury to find constructive possession and to find Orozco-Vasquez guilty beyond a reasonable doubt.

## B. Sentencing

Chief Judge Randa sentenced Orozco-Vasquez to 120 months in prison because he concluded the guidelines range of 63-78 months was insufficient. Since *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness. *Id.* at 260-61. Sentences within the properly calculated advisory guidelines range are presumed reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Sentences outside the guidelines range, however, are entitled to no presumptions; they will be affirmed as reasonable if the sentencing judge articulates appropriate supporting justification under the sentencing factors specified in 18 U.S.C. § 3553(a). *United States v. Cunningham*, 429 F.3d 673, 675 (7th Cir. 2005); *United States v. Johnson*, 427 F.3d 423, 427 (7th Cir. 2005). The more the sentence varies from the guidelines range, the more compelling the justification must be. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

Orozco-Vasquez challenges the reasonableness of his sentence by arguing that the chief judge based it on errone-

ous factual findings. Explicit findings on the facts that influence the decision to sentence outside the guidelines range are not required unless a particular fact is contested and central to the district judge's choice of sentence. *Johnson*, 427 F.3d at 427; *Dean*, 414 F.3d at 730. Factual findings are reviewed the same way as before *Booker*—for clear error. *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). Factual findings are clearly erroneous only if we are firmly convinced after we review all of the evidence that a mistake has been made. *United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006).

Orozco-Vasquez argues that several of Chief Judge Randa's statements during sentencing constitute clearly erroneous "factual findings." Specifically, he challenges: 1) the chief judge's "finding" that "the drugs Mr. Campos-Ruiz saw [Orozco-Vasquez] take into the bathroom [were] being flushed down the bathtub"; 2) the chief judge's observation that Orozco-Vasquez used recognizable "drug language" in recorded conversations; 3) the chief judge's comment that Orozco-Vasquez's 1997 gunshot wound was more likely attributable to a gang-related incident than a car theft; and 4) the chief judge's remark that Orozco-Vasquez did not report to serve a six-month work-release sentence for a state concealed weapons conviction.

We note preliminarily that not every fact-based statement a judge makes at sentencing is a "factual finding." Much of what a judge says in imposing and explaining a sentence consists of observations and assessments that form the basis of the judge's consideration of the § 3553(a) sentencing factors. Sentencing post-*Booker* requires the sentencing judge to properly calculate the advisory guidelines range in the same manner as before *Booker* and then to make a discretionary decision whether to sentence the defendant within the advisory range or outside it in light of the very broadly stated sentencing factors set forth in § 3553(a). *Robinson*, 435 F.3d at 700-01; *Cunningham*, 429 F.3d at

675-76. The second step is an evaluative process by which the judge considers the particular statutory factors that inform the sentence he has decided to impose. We have held that the "duty to consider the statutory factors is not a duty to make findings." *Dean*, 414 F.3d at 729-30. Judicial observations about such factors as the nature and seriousness of the offense, § 3553(a)(1) and (2)(A), the characteristics of the defendant, § 3553(a)(1), and the need to protect the public, § 3553(a)(2)(C), are not "facts" requiring "findings," as when the judge calculates the guidelines range. As we have noted, only where a particular fact is contested and "decisive to the choice of sentence" must there be explicit fact-finding to support the judge's exercise of sentencing discretion.

In this case the chief judge examined the nature and circumstances of Orozco-Vasquez's crimes, his history and characteristics, and the need to protect the public from further crimes—just as § 3553(a) directs. The chief judge characterized Orozco-Vasquez as a large-scale drug dealer, a liar, and a scofflaw for whom the law and previous punishment had served as no deterrent. The judge noted that Orozco-Vasquez stood convicted of possession with intent to distribute a significant amount of cocaine, that he flushed cocaine down the bathtub drain in an effort to destroy the evidence, and that he was heard using recognizable drug code language in wiretapped conversations.

Orozco-Vasquez first assigns error to the chief judge's "finding" (that is how the judge characterized it) "that the drugs Mr. Campos-Ruiz saw [Orozco-Vasquez] take into the bathroom [were] being flushed down the bathtub." It is true that Campos-Ruiz did not say he saw Orozco-Vasquez take drugs into the bathroom, only that he saw him go into the bathroom and come out soaking wet. But the thrust of the chief judge's comment was that Orozco-Vasquez was caught

in the act of destroying the cocaine evidence—a point that is beyond dispute on this record. Even if the chief judge mistakenly "found" that Campos-Ruiz saw Orozco-Vasquez take drugs into the bathroom, the error was clearly harmless.

The chief judge's observation that Orozco-Vasquez used coded drug lingo in the wiretapped conversations was directed at Orozco-Vasquez's claim to have been an innocent bystander in a drug house, not a significant drug dealer as the government maintained. An affidavit from a narcotics officer that accompanied the transcript of the taped conversations identified the passages in question as "possible" or "probable" drug references. The chief judge said he had heard coded "drug talk" like this many times before. This was not a factual finding. It was, instead, part of the chief judge's explanation for his rejection of Orozco-Vasquez's implausible assertion that he was not a large-scale drug dealer. Although we have cautioned district courts to be careful about equating the use or knowledge of drug slang with drug dealing, *see United States v. Harrison*, 431 F.3d 1007, 1012 (7th Cir. 2005), the chief judge's interpretation of the wiretapped conversations was entirely reasonable in the context of the overwhelming evidence in this case.

Orozco-Vasquez also challenges the chief judge's comment that the 1997 shooting in which Orozco-Vasquez was injured probably occurred during a gang-related incident rather than an auto theft. Once again, this comment must be considered in its context, that is, as part of the chief judge's explanation for characterizing Orozco-Vasquez as a liar and a long-standing member of the Mexican Posse. After citing the reasons he felt Orozco-Vasquez could not be believed—his illegal reentries, use of a false name, denial of drug connections and continuous Mexican Posse membership despite very strong evidence to the contrary—the chief judge said there was reason to doubt everything Orozco-Vasquez had to say. The chief judge then explained that he

could not believe Orozco-Vasquez's story about being shot in the head by a neighborhood car thief; the judge thought the more reasonable inference was that the shooting occurred during some sort of gang dispute. The chief judge's take on Orozco-Vasquez's story was not a factual finding. Rather, it was an expression of the judge's extreme skepticism about Orozco-Vasquez's credibility.

Finally, Orozco-Vasquez attacks the chief judge's comment that he was an "absconder" who "didn't show up" to serve his work-release sentence on the state gun conviction. He argues that the record is silent on the matter of whether he ever actually served the sentence, so the chief judge's "finding" that he "failed to serve" the sentence is clearly erroneous. This argument misses the point. The chief judge's comment came as he was explaining why he thought the law had not had a sufficient deterrent effect on Orozco-Vasquez. There is no dispute that a warrant was issued for failure to report for this sentence, and the chief judge thought this demonstrated "total and complete disregard for the law," in combination with Orozco-Vasquez's illegal reentries and use of an alias. Orozco-Vasquez does not argue explicitly that he *did* serve this sentence and that the warrant was issued in error. The chief judge's assessment that Orozco-Vasquez had shown habitual disrespect for the law was hardly unreasonable.

Beyond the foregoing misplaced claims of erroneous "fact-finding," Orozco-Vasquez has not argued that his above-guidelines sentence was otherwise unreasonable. Sentences above or below the guidelines range are reasonable so long as the district judge provides satisfactory justification, consistent with the factors in § 3553(a), for varying from the range. *Johnson*, 427 F.3d at 426. Though he need not have run through the § 3553(a) factors like a checklist, *see Dean*, 414 F.3d at 729, Chief Judge Randa commendably structured his sentencing comments around the specific factors listed in § 3553(a), which makes review for reasonableness

easier. The chief judge made a compelling case for giving Orozco-Vasquez a lengthier sentence than the guidelines recommended. Orozco-Vasquez was dealing cocaine in significant quantities, has shown chronic disrespect for the law, and his previous punishment has had little or no effect on his behavior. He has entered the country illegally and been removed, only to reenter illegally again. He has a history of gun possession and did not report to serve a six-month sentence for possession of a concealed weapon. Under these circumstances, it was not unreasonable for the chief judge to think a longer sentence was required to deter Orozco-Vasquez from further crimes and to protect the public.

Orozco-Vasquez's conviction and sentence are AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—12-5-06