NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 20, 2013
Decided December 16, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-3288

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 11-CR-30225-MJR |
| DANIEL MORAN-VAZQUEZ, *Defendant-Appellant.* | Michael J. Reagan, *Judge.* |

## O R D E R

Daniel Moran-Vazquez challenges the reasonableness of his 87-month, within-guidelines sentence for illegal presence after removal, *see* 8 U.S.C. § 1326(a), asserting that the district court relied too heavily on evidence of his gang ties and involvement in what the judge called human trafficking. Because Moran-Vazquez has not rebutted the presumption that his within-guidelines sentence is reasonable, we affirm his sentence.

Moran-Vazquez, a citizen of Mexico, was 16 years old when he and his family entered the United States in 2002 on immigrant visas. Five years later in Houston he shot a man in the stomach and was sentenced to two years in prison for aggravated

assault with a deadly weapon. He was then found removable based on that aggravated felony (defined as a crime of violence with a term of imprisonment of more than one year). *See* 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii). Moran-Vazquez applied for asylum. At his asylum hearing he testified that he had been expelled from high school because school officials thought he was in a gang. He said he feared that the drug cartels, the Mexican police, or rival gangs would try to kill him because his tattoos reveal his gang affiliation. After the immigration judge denied his asylum application in 2009, Moran-Vazquez was removed and warned that it was a crime to reenter the United States without the permission of the Secretary of Homeland Security.

Moran-Vazquez had returned to the United States by 2011. In December of that year an Illinois state trooper stopped the van he was driving for a traffic violation. The trooper checked Moran-Vazquez's identification and discovered that he lacked a valid driver's license. Thirteen passengers were riding with Moran-Vazquez. One of them who spoke some English said they were from Guatemala and had been traveling with the defendant for two to three days. Moran-Vazquez was arrested and turned over to immigration authorities. He was charged in federal court with violating § 1326(a).

Trial was scheduled to begin in January 2012, but defense counsel obtained a continuance until April 2012 to allow time to prepare and hire an interpreter for attorney-client meetings. Moran-Vazquez intended to argue at trial that he had fled Mexico because he feared harm from the drug cartels (a duress defense), while the prosecutor planned to discredit the defendant's testimony by pointing to evidence of his gang affiliation. On the eve of trial, though, Moran-Vazquez pleaded guilty. He stipulated that he is a Mexican citizen, had been removed after a conviction for an aggravated felony, and was present in the United States without permission.

Moran-Vazquez had been detained continuously after the highway stop, and while in detention he made a number of telephone calls that were recorded. After seeing transcripts of those calls, the probation officer concluded that Moran-Vazquez had been involved in human smuggling and had attempted to suborn perjury. In one conversation, Moran-Vazquez asked his girlfriend to inform the "coyote"—a guide who smuggles aliens across the Mexican border into the United States—that he had been arrested but had managed to drop off three people before his arrest. Shortly before the trial date, Moran-Vazquez also called his mother and said he wanted her to testify falsely that he had recrossed the border after being badly beaten in Mexico and afterward lived with her in Houston because he was afraid of returning to his home country. The district court accepted the presentence report (to which neither party

objected) and calculated a total offense level of 26: a base offense level of 8, plus 16 levels because Moran-Vazquez had been removed after a conviction for a felony crime of violence and another 2 levels for obstruction of justice for trying to elicit false testimony. *See* U.S.S.G. §§ 2L1.2(a), (b)(1)(A)(ii), 3C1.1. Combined with a criminal history category of II, Moran-Vazquez's imprisonment range was 70 to 87 months.

The government urged the district court to impose an above-guidelines sentence based on Moran-Vazquez's attempt to suborn perjury, his gang membership, and his participation in human smuggling. The government provided a statement from a Homeland Security agent in Houston who identified Moran-Vazquez's tattoos—which included the word "Houstone" and the logos of the Houston Astros, Rockets, and Texans—as showing his affiliation with the Houstone Tango Blast gang. The agent explained that "Tango Blast" is the name of a loose affiliation of Hispanic gangs involved in narcotics trafficking and human smuggling, with "Houstone" referring to its Houston branch. Each regional branch, he explained, identifies itself by using the logos of local sports teams. Defense counsel countered that Moran-Vazquez had a fatherless childhood, was only 20 when he committed the shooting in Houston, and had returned to the United States to be with his two U.S.-born children. Counsel provided letters written by Moran-Vazquez and his mother, both asking the judge for leniency.

The district court recognized that Moran-Vazquez "had a difficult childhood, apparently never knew his father, and is young." But the court weighed against those factors the defendant's disrespect for the law as shown by his illegal reentry, his attempt to suborn perjury from his mother, and his failure to recognize the gravity of his crime. That Moran-Vazquez belittled his criminal conduct, the judge explained, was evident from his letter to the court, which asserts to the judge, "You know very well that I did not commit a serious crime just because they arrested me." The court considered the defendant's past crimes and the circumstances of his arrest in Illinois, and explained that those factors were relevant to his sentence for illegal presence after removal. The court concluded that a sentence of 87 months (the top of the guidelines range) was necessary to protect the public and deter future crimes given Moran-Vazquez's gang ties, involvement in human smuggling, and high likelihood of recidivism. *See* 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C).

In challenging his sentence, Moran-Vazquez argues that the district court focused too heavily on his involvement with what the court described as "human trafficking." As a matter of semantics, the defendant explains, "human trafficking"—in contrast with "human smuggling"—is generally understood to involve an element of force, fraud, or

coercion. None of those elements are described in the presentence report, and thus he contends that the district judge erred in imposing a high-end sentence based on his purported involvement in "trafficking."

The dictionary defines "human trafficking" as the illegal movement of persons "with the intent to hold the person captive or exploit the person for labor, services, or body parts." BLACK'S LAW DICTIONARY 1635 (9th ed. 2009). Similarly, the Department of State draws the distinction that, "[u]nlike smuggling, which is often a criminal commercial transaction between two willing parties who go their separate ways once their business is complete, trafficking specifically targets the trafficked person as an object of criminal exploitation." DEP'T OF STATE, *Fact Sheet: Distinctions Between Human Smuggling & Human Trafficking* (April 2006), http://state.gov/m/ds/hstcenter/90434.htm. And in the Trafficking Victims Protection Act, Congress describes trafficking as "a modern form of slavery" often perpetrated by "fraud, force, and coercion." 22 U.S.C. § 7101(b)(1), (b)(2). The district judge was not making a legal determination, however, when he used the term "human trafficking." Instead the judge simply was referring to Moran-Vazquez's transportation of undocumented aliens for money, as described in the presentence report. Moran-Vazquez did not challenge the accuracy of this report, and his lawyer's assertion on appeal that Moran-Vazquez "was just giving some guys a ride to work who couldn't speak English" is preposterous in light of the defendant's phone call to his girlfriend. Indeed, taking "some guys" to work is not the explanation Moran-Vazquez gave the state trooper. He claimed at the time that he was driving the Guatemalans to church. Given the undisputed facts in the presentence report, the district court reasonably considered evidence of Moran-Vazquez's illegal transportation of undocumented aliens as a factor supporting a longer sentence in order to protect the public and deter future crimes. *See United States v. Flores-Olague*, 717 F.3d 526, 535–36 (7th Cir. 2013); *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1049 (7th Cir. 2013).

Moran-Vazquez also contends that his sentence reflects unwarranted emphasis on his gang ties. The district court should not have drawn an adverse inference from his tattoos, says the defendant, because a lay observer might conclude that he is "just a big sports fan given his tattoos supporting the Astros, Rockets, and Texans." But the court was not a lay observer. It had the benefit of an expert's explanation that Houstone Tango Blast gang members use local sports logos to advertise their gang affiliation, as well as the fact that Moran-Vazquez has a "Houstone" tattoo and his statement to a Houston police officer admitting membership in the Houstone gang, both documented in the presentence report. Gang membership is a factor that courts may consider when addressing a defendant's personal characteristics, *see* 18 U.S.C. § 3553(a)(1); *United States*

*v. Love*, 680 F.3d 994, 1000 (7th Cir. 2012); *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1105 (7th Cir. 2006), and here the court reasonably explained that Moran-Vazquez's ties to a gang involved in narcotics trafficking and human smuggling were relevant in showing a disrespect for the law and higher likelihood of reoffending. A within-guidelines sentence is presumed reasonable, *see United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012); *United States v. Garcia-Ugarte*, 688 F.3d 314, 316 (7th Cir. 2012), and Moran-Vazquez has not rebutted that presumption.

AFFIRMED.