In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2115, 99-2134, 99-2237 & 99-3403

United States of America,

Plaintiff-Appellee,

v.

Darryl Milquette, Lyle Rivard,
Stephen Putzlocker, and James Sherard,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 98-CR-193--Charles N. Clevert, Judge.

Argued February 25, 2000--Decided June 2, 2000

Before Bauer, Ripple, and Manion, Circuit Judges.

Bauer, Circuit Judge.  From early-1997 through mid-1998, James Sherard was the leader of a cocaine distribution network that supplied drugs to the Green Bay, Wisconsin area. Working out of Milwaukee, Wisconsin, Sherard obtained cocaine and arranged for Lyle Rivard and Stephen Putzlocker to transport the drugs from Milwaukee to Green Bay. After the drugs arrived in Green Bay, Darryl Milquette was in charge of packaging and distributing the cocaine; Putzlocker helped Milquette package and distribute the drugs. After the drugs had been sold, Rivard and Putzlocker returned to Milwaukee and delivered cash to Sherard who gave them more cocaine to take back to Green Bay.

Eventually, the law caught up with the drug ring and a grand jury in the Eastern District of Wisconsin returned an indictment charging Sherard, Milquette, Rivard, and Putzlocker/1 with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. sec.sec. 841(a)(1) and 846 and 18 U.S.C. sec. 2. All four pled guilty, but Sherard moved to withdraw his plea. After a hearing, the district court denied Sherard's motion. The district court then sentenced Sherard to 374 months in prison, 60 months of supervised release, and a $2000 fine. Sherard appeals the

denial of his motion to withdraw his guilty plea.

   Rule 32(e) of the Federal Rules of Criminal Procedure authorizes a district judge to permit the withdrawal of a guilty plea "if the defendant shows any fair and just reason." However, once a district court has accepted a guilty plea, the defendant does not have an unlimited right to withdraw the plea; rather, the burden is on the defendant to demonstrate a fair and just reason for such withdrawal. United States v. Schilling, 142 F.3d 388, 398 (7th Cir. 1998). We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Pike, No. 99-2532, 2000 WL 520594, at *3 (7th Cir. May 1, 2000). In reviewing the district court's decision, we will uphold factual findings as to whether the defendant has demonstrated a fair and just reason unless they are clearly erroneous. United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir. 1994).

   Sherard argues that the district court should have permitted him to withdraw his plea for two reasons. First, he claims that he was in a state of panic when he entered his guilty plea. Sherard contends that he pled guilty the day his trial was scheduled to begin only because he had just learned that all of his codefendants were going to testify against him. According to Sherard, "this information clouded his judgment" and "overwhelmed" him. Sherard told the district court that he was innocent of the crime, but that since all of his codefendants were going to testify against him, he was sure he would be convicted "no matter what the truth was." As his second reason for wanting to withdraw his guilty plea, Sherard asserts that he did not fully understand the prison sentence that he faced. Sherard claims that he thought his plea agreement would give him a sentence of ten years instead of the more than thirty year sentence he received.

   At the hearing on Sherard's motion to withdraw his guilty plea, the district court inquired at great length into the circumstances of Sherard's guilty plea. Judge Clevert reviewed the transcript of Sherard's change of plea hearing and had substantial portions of the transcript read into the record. When denying Sherard's motion to withdraw his plea, the district court stated:

I don't find anything, any fair or just reason on this record to warrant vacating the plea. [Sherard] has not, first of all, in listening to the exchange and recalling what took place during the course of the guilty plea hearing there is no doubt in my mind that [Sherard] was clear thinking at the time of the plea.

The fact that your client did not blindly accept the factual allegations of the U.S. Attorney and went so far as to precisely talk about the dates involved and what he did and what others did underscores my conclusion that he was clear thinking and that he was not in a state of panic.

I could search with a telescope and not find any reasons in this case on this particular record. I have not heard you say anything which would allow me to conclude that Mr. Sherard did not enter this guilty plea with full and complete knowledge of what it was, what was charged, and that he did not know whether or not he should plead guilty or not guilty. On this record from what he said he clearly acknowledged his involvement in the conspiracy.

The district court found, as a matter of fact, that Sherard was thinking clearly and was not in a state of panic when he entered his guilty plea. The district court based this factual finding on its own recollection of Sherard's demeanor during his change of plea hearing as well as the fact that Sherard contested certain facts at the hearing and provided very specific information about the conspiracy. This factual determination was not clearly erroneous; rather, based on the record, this conclusion was entirely reasonable. Since Sherard offered no credible factual support for his argument that he panicked, the district court did not abuse its discretion in rejecting it.

Sherard's second argument for withdrawing his plea, that he did not understand the sentence that could be imposed, is also without factual support. Contrary to Sherard's assertions, the record shows that the district court advised him of the maximum possible penalty at the change of plea hearing. At that hearing, the district court read the portions of the plea agreement which related to sentencing. The district judge specifically asked Sherard if he understood those sections and Sherard said that he did. The trial court further advised Sherard that his plea agreement did not provide any guarantees as to what his sentence would be and that much of his final sentence rested within the discretion of the United States Attorney's Office.

Moreover, at the hearing to withdraw the plea, the district court and Sherard's attorney had the following exchange:

SHERARD'S ATTORNEY:  It was clear in Mr. Sherard's mind that somehow it was, it's his recollection that he was fairly comfortable with the fact that if he cooperated and provided the

information that the government wanted that his sentence would be somewhere in the range of ten years. I don't recall that portion of the conversation and he feels that it was explicitly stated.

When we got an opportunity to sit down after he returned with an actual sentencing guideline and he began to discuss his recollections of what was taking place just prior to the time he entered the plea agreement I didn't feel that those were realistic expectations unless there was some new information I wasn't aware of. And I realize that for some reason his recollection was totally different than mine and his understanding at the time he entered into the plea agreement according to what he's telling me is completely different than what I felt we discussed.

THE COURT: Is there something in the plea agreement which you can specifically point to as evidence that your client did not know the maximum possible penalty in this case?

SHERARD'S ATTORNEY: No, Your Honor. I believe the maximum possible penalty was well known by the defendant prior--

At that point, Sherard interrupted and declared that he never knew about the maximum possible penalty, but, as we explained, the record clearly contradicts this position. Because the factual record shows that Sherard was advised of the possible penalties in this case, the district court did not abuse its discretion in denying his motion to withdraw his plea agreement.

Darryl Milquette received a sentence of 110 months imprisonment, 60 months of supervised release, and a $2000 fine. When calculating Milquette's criminal history category under the Guidelines, the district court included criminal history points for two battery "citations" that Milquette received from the Green Bay Municipal Court. By including these two battery citations, the trial court calculated Milquette's criminal history to be III, which (when coupled with his offense level) called for a sentencing range of 97 to 121 months imprisonment.

Milquette challenges the inclusion of the two battery offenses. According to Milquette, if these battery citations had been excluded, he would have been sentenced with a criminal history category of II which would have given him a sentencing range of 87 to 108 months in prison. We review the district court's ruling on this issue de novo. United States v. Redding, 104 F.3d 96, 98 (7th Cir. 1996); United States v. Booker, 71 F.3d 685, 688 (7th Cir. 1995).

Section 4A1.2(c)(1) of the United States Sentencing Guidelines governs whether a local ordinance violation must be included in calculating a defendant's criminal history category. Although it generally prohibits counting local ordinance violations, sec. 4A1.2(c)(1) actually requires courts to include ordinance violations that are also criminal offenses under state law. Id.; United States v. Staples, 202 F.3d 992, 996 (7th Cir. 2000); Redding, 104 F.3d at 99; see also United States v. Hooks, 65 F.3d 850, 855 (10th Cir. 1995) ("local ordinance violations that are also criminal offenses under state law are counted in computing a defendant's criminal history score."). Application Note 12 of the Guideline confirms our interpretation of sec. 4A1.2 (c)(1) and provides:

12.  Local Ordinance Violations.  A number of local jurisdictions have enacted ordinances covering certain offenses (e.g., larceny and assault misdemeanors) that are also violations of state criminal law. This enables a local court (e.g., a municipal court) to exercise jurisdiction over such offenses. Such offenses are excluded from the definition of local ordinance violations in sec. 4A1.2(c)(1) and, therefore, sentences for such offenses are to be treated as if the defendant had been convicted under state law.

Here, Milquette was assigned criminal history points for two separate acts of battery. In one case, he hit a man in the back of the head with a brick. In the other case, he punched an unsuspecting man in the face. Both acts clearly satisfy Wisconsin's state law requirements for criminal battery. Therefore, because Milquette's local ordinance citations were imposed for conduct that also violated Wisconsin criminal law, the district court properly counted these offenses when calculating his criminal history category.

Stephen Putzlocker received a sentence of 120 months imprisonment, 60 months supervised release, and a $500 fine. Putzlocker's main argument/2 on appeal is that the district court should have deducted two points from his offense level under U.S.S.G. sec. 3B1.2(b) because he was a "minor participant" in the drug distribution conspiracy. Putzlocker contends that he qualifies as a minor participant because he was a low-level courier who acted at the direction of others, received no share of the profits, and whose involvement with the conspiracy only lasted five months. We review the district court's conclusion on this issue for clear error. United States v. James, 113 F.3d 721, 731 (7th Cir. 1997).

Section 3B1.2(b) of the Guidelines directs district courts to decrease a defendant's offense level by two points if "the defendant was a minor participant in any criminal activity." Application Note 3 of that Guideline defines a "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." We have previously held that "downward adjustments to the base offense level for minor participants are to be used infrequently." United States v. Tanksley, 104 F.3d 924, 925 (7th Cir. 1997) (per curiam). "When a defendant requests a decrease in his offense level, he has the burden of demonstrating that he is eligible for the reduction by a preponderance of the evidence." United States v. Nobles, 69 F.3d 172, 190 (7th Cir. 1995).

In denying Putzlocker's request for a two point reduction as a minor participant, Judge Clevert observed:

it seems to me that Mr. Putzlocker is among other parties who were essentially couriers in this drug conspiracy. And it does not appear that Mr. Putzlocker is dissimilar from others and, therefore, not entitled to some kind of special treatment as a minor participant . . .

If we just go through the numbers here and look at who was involved in this conspiracy, and if you look at the persons named . . . Mr. Putzlocker had people below him, by his own acknowledgment, and others at his level. And I see nothing in his level of participation that would distinguish him in a way that he should be given some kind of mitigation in this particular case.

The facts in this case amply support the district judge's finding. Putzlocker made numerous trips between Milwaukee and Green Bay to transport drugs. And, although he was primarily a drug courier, Putzlocker also played an active role packaging and distributing the cocaine he had brought to Green Bay. There were members of the conspiracy who ranked below Putzlocker and whose participation was far less important to the success of the operation than was Putzlocker's. Finally, we note that the district judge had carefully familiarized himself with the many individuals involved in this conspiracy and was in a good position to determine the extent of each one's participation. In short, there are several facts in the record to support the district court's finding that Putzlocker was not a minor participant in this drug conspiracy. We therefore conclude that Judge Clevert did not

commit clear error by denying Putzlocker's request for a two point reduction.

The last defendant whose case is before us, Lyle Rivard, was sentenced to 130 months in prison, 60 months supervised release, and ordered to pay a $500 fine. At sentencing, the district court found that Rivard was a minor participant in the conspiracy and therefore reduced his offense level by two points under U.S.S.G. sec. 3B1.2(b). However, the trial court denied a government motion under U.S.S.G. sec. 5K1.1 to deduct an additional point from Rivard's offense level for substantial assistance to the government. Rivard complains that the district court misapplied the Guidelines when it concluded that he was a minor participant but simultaneously denied the government's motion for a downward departure based on substantial assistance. The government counters Rivard's appeal by arguing that we do not have jurisdiction to review the district judge's discretionary denial of the sec. 5K1.1 motion.

We lack jurisdiction to review a district court's refusal to depart downward where that refusal resulted from a proper exercise of the district judge's discretion. United States v. Winters, 117 F.3d 346, 348 (1997); United States v. Franz, 886 F.2d 973, 978 (7th Cir. 1989). Rivard claims that he is entitled to a downward departure for substantial assistance because he provided information about Sherard's drug distribution conspiracy as well as information concerning a murder in Green Bay. The district court denied the sec. 5K1.1 motion because it found that Rivard did not provide any information that the government did not already have regarding the drug conspiracy. The trial court reached this conclusion because Rivard did not cooperate with the government until "substantially late in the game" and, by that time, the government had already arranged for several other codefendants to testify against Sherard. Similarly, Judge Clevert found that the information Rivard provided regarding a murder in Green Bay had not yet proven to be useful or even connected to that crime.

There were certainly facts in the record to support Judge Clevert's conclusion that Rivard did not provide useful information to the government. By making this finding, the district judge simply exercised his discretion and determined that Rivard had not provided the requisite substantial assistance necessary to qualify him for a downward departure under U.S.S.G. sec. 5K1.1. Because the denial of the government's motion for a downward departure resulted from a proper exercise of Judge

Clevert's discretion, we have no jurisdiction to consider Rivard's appeal.

The decisions in Sherard's, Milquette's, and Putzlocker's cases are affirmed. Rivard's appeal is dismissed for lack of jurisdiction.

/1 Four other people were charged in the same indictment, but their cases are not before us.

/2 Putzlocker also asserts that the district court should not have included his municipal ordinance violations when calculating his criminal history category. We reject Putzlocker's argument for the same reasons we rejected Milquette's argument-- the conduct Putzlocker was cited for also violated Wisconsin state law. Furthermore, the inclusion of these ordinance violations was harmless because even if they had not been counted in his criminal history score, Putzlocker would remain a criminal history category VI.