In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-1812

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS WALKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 04 CR 19—**Larry J. McKinney**, *Chief Judge.*

ARGUED OCTOBER 24, 2005—DECIDED MAY 17, 2006

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Thomas Walker, an inmate at the
United States Penitentiary in Terre Haute, Indiana,
pleaded guilty to stabbing four correctional officers with
sharpened metal rods. A few days later he had second
thoughts and mailed a letter to the district court asking to
withdraw one of his guilty pleas. On the day of sentencing,
Walker's attorney filed a motion to withdraw all four pleas,
asserting that Walker "felt coerced" to plead guilty because
the district court had denied his motion to transfer the case
to Indianapolis and he did not think he could get a fair trial
in Terre Haute. The district court denied Walker's motion

and sentenced him to 240 months' imprisonment—30 months longer than the high end of the applicable advisory Sentencing Guidelines range.

Walker argues on appeal that (1) the district court should have permitted him to withdraw his guilty pleas, (2) under Rule 32(h) of the FEDERAL RULES OF CRIMINAL PROCEDURE he was entitled to advance notice before the district court imposed a sentence that departed upward from the advisory Guidelines range, and (3) his sentence was unreasonable.

We affirm. The district court held that Walker had not presented a fair and just reason to withdraw his guilty pleas but had merely changed his mind; this ruling was not an abuse of discretion. Rule 32(h)'s notice requirement—which applies to "departures" from the Guidelines, a concept that our post-*Booker*[1] cases have called "obsolete"—does not apply here, where the district court selected a sentence at variance from the advisory Guidelines range based on the sentencing factors specified in 18 U.S.C. § 3553(a). Finally, Walker's sentence of 240 months was reasonable and adequately explained by the district court.

## I.  Background

Joseph Sims, Gary Brummett, Terry Ray, and Lloyd McPherson, Jr., were on duty as correctional officers at the United States Penitentiary in Terre Haute, Indiana, on July 14, 2004. Sims was sitting on a stool monitoring a metal detector as inmates returned to their housing units for the evening. Walker sneaked up behind Sims and stabbed him twice in the back with two sharpened metal rods. Walker then ran down a corridor where Officers Brummett, Ray, and McPherson apprehended him, but not

---

[1] *United States v. Booker,* 543 U.S. 220 (2005).

before Walker managed to stab each of these officers as well. All four officers were treated for their injuries at a local hospital, with Sims requiring an overnight stay.

FBI Agent James Buckley interviewed Walker about the assaults. After signing a written *Miranda* waiver, Walker admitted to Buckley that he stabbed one officer during the incident on July 14, and also that he swung the sharpened metal rods at three other officers but was not sure whether he actually stabbed any of them. Walker told Buckley he did not know Officer Sims's name and had not been angry at him when he stabbed him, but simply wanted to escape from the penitentiary.

A grand jury indicted Walker on four counts of assaulting a federal officer with a deadly or dangerous weapon and inflicting bodily injury in violation of 18 U.S.C. § 111(a) and (b).[2] After his initial hearing in the district court in Terre Haute, the Bureau of Prisons transferred Walker to its penitentiary in Marion, Illinois, pending trial. Walker moved to transfer his case from Terre Haute to Indianapolis. He asserted that radio and television stations in the Terre Haute area had broadcast news accounts of the July 14 assaults during the week following the incident. Walker argued that these news accounts, coupled with the federal penitentiary's status as a major employer in Terre Haute, made it unlikely that a fair and impartial trial could be had if the case were not transferred.

The district court held a hearing on February 8, 2005, to consider Walker's motion to transfer the case. Walker had been returned to the Terre Haute penitentiary to facilitate

---

[2] Assaulting a federal officer while the officer is performing official duties carries a maximum penalty of twenty years in prison if the defendant uses a deadly or dangerous weapon, or inflicts bodily injury. 18 U.S.C. § 111(b).

his presence at the hearing; the Bureau of Prisons intended to keep him in Terre Haute until his trial in March. The government opposed transferring the case, citing the inconvenience to its witnesses, all of whom resided in the Terre Haute area. The district court denied the motion, proposing instead to call a larger-than-usual venire:

> [T]he remedy is not transferring this case to Indianapolis, given all of the witnesses that will be here in any case. The remedy is calling a few more jurors to see if there is the kind of prejudice that you—that defense is concerned about. And if of course there is, if we find that, we'll not convene the trial at that point and we'll go to Indianapolis. But at this point I don't think it's necessary.

Defense counsel then asked to have Walker transferred back to the penitentiary in Marion until the start of his trial, citing Walker's concerns about his safety in Terre Haute. The court tried to reset the trial for an earlier date so as to minimize Walker's time in Terre Haute, but government counsel's schedule made that unworkable. The following exchange then ensued:

> THE COURT: I'm not going to send you back to Marion, but what I will do is request the government to provide—file with me the plan of providing security for this man while he's in the prison.
>
> THE DEFENDANT: You don't have to worry about no security. You can give me a cop out now.
>
> THE COURT: A what?
>
> THE DEFENDANT: He can give me a cop out now.
>
> THE COURT: What's that?
>
> THE DEFENDANT: I want to go ahead and plead guilty now.

At that point the court recessed for fifty-five minutes, and Walker and his counsel prepared a petition to enter a guilty plea without a plea agreement.

The court reconvened, and during the change-of-plea colloquy, the judge recited the elements of the four counts against Walker. Walker admitted that each element was satisfied and he was guilty of four violations of § 111(a) and (b).[3] The judge then advised Walker that he faced the potential of twenty years in prison and a $250,000 fine on each of the four counts, for a maximum possible sentence of eighty years in prison and a $1,000,000 fine. Walker said he understood these potential penalties. The court then evaluated the voluntariness of Walker's pleas:

> THE COURT: Anybody made an offer or any promise to you in an effort to induce you to plead guilty in this case?
>
> THE DEFENDANT: No.
>
> THE COURT: Anybody attempted in any way to force you into a plea agreement in this case?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you pleading guilty of your own free will because you are guilty?
>
> THE DEFENDANT: I'm pleading guilty because I'm not going to get a fair trial.
>
> THE COURT: The question, sir, if that's what—if that's what you think, then that is not a voluntary plea. A

---

[3] At one point during the plea colloquy, Walker denied inflicting bodily injury on Officer McPherson but did admit that he had assaulted him with a dangerous or deadly weapon, which by itself was sufficient to trigger the enhanced penalties of 18 U.S.C. § 111(b).

voluntary plea is that you're pleading guilty of your own free will because you are guilty.

THE DEFENDANT: Yeah, man, I'm pleading guilty.

THE COURT: Because you are guilty?

THE DEFENDANT: Because I am guilty.

The government then presented the factual basis for the pleas through the testimony of FBI Agent Buckley. Buckley recounted the details of Walker's confession admitting that he assaulted the four on-duty officers with two sharpened metal rods. Responding to questions from the court, Walker admitted Buckley's testimony was correct, and the court accepted the guilty pleas on all four counts.

On February 22 the district court received a letter from Walker stating he wished to withdraw his guilty plea on count four of the indictment (the assault on McPherson). On March 9, the day of Walker's sentencing hearing, defense counsel formally moved for leave to withdraw Walker's guilty pleas on all four counts. The motion asserted that Walker's pleas were not voluntary because he was "anguished and distraught over the Court's denial of [his] motion to transfer the case, and believed that he could not receive a fair trial before an impartial jury in Terre Haute, thus he had no choice but to plead guilty." The court denied the motion, concluding that "the only thing that has changed is the defendant's mind. And just because he has now thought about it and thinks it is a bad idea is not enough to show a fair and just reason for withdrawing the plea."

The court then proceeded to sentencing, assigning Walker an adjusted offense level of 30 and a criminal history category of VI under the Sentencing Guidelines. This produced an advisory sentencing range of 168-210 months' imprisonment. The parties agreed that the court correctly calculated this range because Walker qualified as a career

offender under the Guidelines.[4] Consulting the range as advisory, the district court concluded that it did not adequately address "the number of assaults in this case, and the viciousness of the attack, and the complete lack of any motivation but harm and violence for its own sake." The court imposed an above-Guidelines sentence of 240 months in prison.

## II.  Analysis

### A.  Motion to withdraw guilty plea

A defendant may withdraw a guilty plea before sentence is imposed if he presents a "fair and just reason for the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). The burden is on the defendant to demonstrate a fair and just reason for plea withdrawal. *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir. 2000). Walker argued in the district court that his guilty pleas were not voluntary because of the pressure he felt as a result of the court's denial of his motion to transfer his case to Indianapolis. *See United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir. 1987) ("One 'fair and just' reason for withdrawing a plea is where that plea was not voluntarily made."). We review the district court's denial of a plea withdrawal motion for abuse of discretion and its underlying factual findings for clear error. *Milquette*, 214 F.3d at 861.

We find no clear error or abuse of discretion here. Walker contended that he was "anguished and distraught" by the imminent prospect of going to trial in Terre Haute, a venue where he believed the jury would be stacked against him. But the district court agreed to summon an extra large

---

[4] U.S.S.G. § 4B1.1(b)(C) ("Career Offender" provision setting Walker's base offense level at 32 and his criminal history category at VI). Walker's offense level was then reduced by two levels to reflect his acceptance of responsibility. U.S.S.G. § 3E1.1(a).

number of potential jurors to facilitate the selection of an impartial jury and assured Walker that if, after questioning the oversized venire, an impartial jury could not be seated, "we'll not convene the trial at that point and we'll go to Indianapolis." Moreover, the record reflects a thorough plea colloquy during which Walker freely admitted that he was guilty of the four criminal counts against him. Walker also agreed on the record that Agent Buckley's testimony correctly described his admission to assaulting the four correctional officers. Although Walker suggested at one point during the plea colloquy that he was pleading guilty because he thought he could not get a fair trial in Terre Haute, the judge carefully instructed him that his guilty pleas could not be accepted unless they were entered of his own free will and based on his actual guilt. Walker then assured the court that he was pleading guilty because he was guilty.

Walker argues that the "spontaneous nature" of his decision to plead guilty casts doubt on the sworn responses he gave during his change-of-plea hearing. We are not persuaded. The court recessed for fifty-five minutes between the time Walker made his surprise announcement that he would plead guilty and the commencement of his plea hearing. During that extended recess, the parties drafted a petition to enter the guilty pleas and Walker had adequate time to reflect on his decision.

"The only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers." *Ellison*, 835 F.2d at 693. Accordingly, we give great weight to what was said during the change-of-plea colloquy between the defendant and the judge, *id.*, and a "defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle" to show his reason for withdrawing

the plea is fair and just. *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992).

The record of the change-of-plea hearing does not support Walker's contention that his judgment was so clouded by emotion and fear that his guilty pleas were involuntary. Instead, the transcript reveals that the district judge made every effort to reassure Walker that he would get a fair trial and to ensure that Walker was pleading guilty because he committed the crimes described in the indictment. The district judge observed Walker's appearance, demeanor, and tone of voice at the plea hearing and was in the best position to determine whether his pleas were voluntary. *See Trussel*, 961 F.2d at 689-90. The district court's finding that Walker's guilty pleas were voluntary was not clearly erroneous, and the court's denial of the plea withdrawal motion was not an abuse of discretion.

### B.  Notice under Rule 32(h)

Walker next argues that his sentence should be vacated because the district court violated Rule 32(h) of the FEDERAL RULES OF CRIMINAL PROCEDURE when it failed to give him reasonable notice before imposing an upward out-of-Guidelines sentence. He forfeited this issue by not objecting in the district court, so our review is for plain error. *United States v. Woods*, 301 F.3d 556, 560 (7th Cir. 2002) (citing *United States v. Olano*, 507 U.S. 725, 732-34 (1993)). "We may correct a plain error if . . . (1) there is indeed an error, (2) it is plain, clear or obvious, and (3) it affects substantial rights," though we are not required to correct it. *Woods*, 301 F.3d at 560; FED. R. CRIM. P. 52(b).

Rule 32(h) provides as follows:

> **(h) Notice of Possible Departure from Sentencing Guidelines.** Before the court may depart from the applicable sentencing range on a ground not identified

for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Rule 32(h) thus applies only to "departures" from the Sentencing Guidelines. Before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), district courts were required by 18 U.S.C. § 3553(b)(1) to impose sentences that fell within the sentencing ranges prescribed by the Guidelines except under narrow and specifically defined circumstances. A sentencing court engaged in a "departure" from the Guidelines when it invoked the very limited discretion that existed under the mandatory Guidelines regime to sentence outside the applicable Guidelines range where one of the specified circumstances was found to exist. *See, e.g.*, 18 U.S.C. § 3553(b)(1) (excised by *Booker*, 543 U.S. at 259); U.S.S.G. § 4A1.3 (authorizing departures when a defendant's criminal history score inadequately reflects his prior criminal conduct); U.S.S.G. § 5K2.0 (permitting departures based on relevant circumstances that the Guidelines have overlooked entirely or have accounted for insufficiently); *United States v. Parker*, 368 F.3d 963, 968 (7th Cir. 2004) (noting district court's "discretion under the guidelines to assign upward departures when a particular case presents atypical circumstances").

But after *Booker* our cases have declared the concept of departures "obsolete" and "beside the point." *E.g., United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005) ("Johnson's framing of the issue as one about 'departures' has been rendered obsolete by our recent decisions applying *Booker*. . . . [A]fter *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that

cabined the discretion of sentencing courts to depart from guidelines that were then mandatory."); *United States v. Laufle*, 433 F.3d 981, 986-87 (7th Cir. 2006) ("Now that *Booker* has rendered the Guidelines advisory and district courts have much broader authority to sentence outside the recommended range, departures are beside the point."). *See also United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005); *United States v. Long*, 425 F.3d 482, 487 (7th Cir. 2005); *United States v. Castro-Juarez*, 425 F.3d 430, 434-36 (7th Cir. 2005) (looking at departure analysis "only by way of analogy" to aid the court's determination of the sentence's reasonableness). The question presented here is whether, in light of *Booker* and post-*Booker* case law in this circuit, Rule 32(h) has any continuing application.[5]

Rule 32(h) has its origins in *Burns v. United States*, 501 U.S. 129 (1991). *Burns* held that an earlier version of Rule

---

[5] We are aware of at least two other circuits that continue to require district courts to engage in traditional departure analysis post-*Booker*. *See, e.g.*, *United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006) (describing that circuit's three-step sentencing approach: (1) determine the appropriate Guidelines range, (2) decide whether a "traditional departure" is called for under U.S.S.G. §§ 4A1.3 or 5K, and (3) consider all factors listed in 18 U.S.C. § 3553(a) to determine whether a sentence outside the advisory Guidelines range is needed). *See also United States v. Finfield*, 432 F.3d 1056, 1061 n.5 (9th Cir. 2005) (citing *United States v. Menyweather*, 431 F.3d 692, 695 (9th Cir. 2005) (noting district court's continuing obligation to engage in traditional departure analysis)). The Eighth Circuit, which retains pre-*Booker* departure analysis, distinguishes between traditional "departures" and sentences at variance from the Guidelines for purposes of Rule 32(h). *See United States v. Sitting Bear*, 436 F.3d 929, 932-33 (8th Cir. 2006) (citing *United States v. Long Soldier*, 431 F.3d 1120, 1122 (8th Cir. 2005) ("[N]otice pursuant to Rule 32(h) is not required when the adjustment to the sentence is effected by a variance, rather than by a departure.")).

32 impliedly required district courts to give defendants notice before sua sponte departing upward from the Guidelines sentencing range based on grounds not identified by the presentence report or by the government's sentencing recommendation. *Id.* at 138-39. In order to give effect to a defendant's Rule 32 right "to comment upon . . . matters relating to the appropriate sentence,"[6] *Burns* held that defendants must be given advance notice of the grounds on which the court might depart. *Id.* at 136. The Court reasoned that "the Guidelines place essentially no limit on the number of potential factors that may warrant a departure . . . [so] no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." *Id.* at 136-37. Rule 32(h) codified this rule from *Burns*.

Now that *Booker* has rendered the Guidelines advisory, the concerns that animated the Court's decision in *Burns* no longer apply. The *Burns* Court was concerned about the unexpected sua sponte invocation of a departure provision as grounds to exceed an otherwise mandatory Guidelines sentence. A sentencing court applying *Booker* now consults the Guidelines as *guidance* for what is a wholly discretionary decision—discretion that is exercised by reference to the broad array of sentencing factors set forth in § 3553(a). Those factors include: the defendant's offense conduct, personal history, and characteristics; the need for the sentence to provide just punishment, to protect the public, to provide deterrence, and to rehabilitate the defendant; the Sentencing Commission's advisory Guidelines range and policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution for victims. 18 U.S.C. § 3553(a). The element of unfair surprise that underlay *Burns* and led to the creation of Rule 32(h) is

---

[6] This right was then codified at FED. R. CRIM. P. 32(a)(1) and is now found generally at FED. R. CRIM. P. 32(i)(1).

no longer present; defendants are on notice post-*Booker* that sentencing courts have discretion to consider any of the factors specified in § 3553(a).[7]

Here, Walker had full knowledge of all the facts on which the district court relied for its § 3553(a) analysis. The district court did not unexpectedly "depart" from a generally binding Guidelines range based on information not contained in the presentence report or the parties' sentencing submissions; rather, the court predictably applied *Booker* and exercised its discretion to arrive at a sentence based on the advisory Guidelines range and the discrete set of factors specified in § 3553(a). Rule 32(h) did not apply, and the district court therefore was not required to give advance

---

[7] On May 4, 2006, the government filed a letter under Rule 28(j), FED. R. APP. P., indicating that it wished to withdraw its argument concerning the inapplicability of Rule 32(h) to out-of-Guidelines sentences post-*Booker*. Counsel for the government asserted that she had "recently been made aware that the argument is contrary to Department of Justice policy." She summarized Department of Justice ("DOJ") policy as follows: "[A]lthough Rule 32(h) does not literally apply to the district court's discretion to sentence defendants post-*Booker*, due process concerns may still require a district court to provide notice and opportunity to be heard on any contemplated departure or imposition of a non-Guideline sentence." The letter then asserts that any error in this case was harmless. The government's new position is noted, but does not change our view of the issue. The DOJ apparently takes the position that while Rule 32(h) does not "literally" apply to post-*Booker* out-of-Guidelines sentences, it should be interpreted to apply because of "due process concerns." No due process argument was asserted in this case. It is unclear in any event how "due process concerns" could be implicated by the district court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), as *Booker* requires; notice is provided by *Booker* and the statute itself.

notice before imposing a sentence above the advisory
Guidelines range based on the factors set forth in § 3553(a).

**C.  Reasonableness**

Finally, Walker argues that his above-Guidelines sen-
tence was unreasonable. We disagree. Sentencing courts
post-*Booker* must first consult a properly calculated advi-
sory Guidelines range and then, by reference to the factors
specified in § 3553(a), select a sentence either inside or
outside the advisory range. *See United States v. Dean*, 414
F.3d 725, 729 (7th Cir. 2005). Sentences within the advisory
range are entitled to a rebuttable presumption of reason-
ableness, *see United States v. Mykytiuk*, 415 F.3d 606, 608
(7th Cir. 2005), and sentences outside the advisory range
require a more thorough explanation based on the § 3553(a)
factors. *Johnson*, 427 F.3d at 426. The farther a sentence
varies from the advisory range, the more compelling the
district court's explanation must be. *Id.* at 426-27 (citing
*Dean*, 414 F.3d at 729).

There is no dispute here that the district court correctly
calculated Walker's advisory Guidelines range. Our only
consideration is whether the district court's 240-month
sentence—30 months longer than the high end of Walker's
advisory range—was adequately reasoned by reference to
the § 3553(a) sentencing factors. The district court was
particularly concerned about the number of Walker's
victims and the wanton, senseless nature of the violence.[8]
The district court explained that the Guidelines range

---

[8] Although Walker did indicate to an FBI agent that he wanted
to escape from prison, nothing about these stabbings reflects any
realistic plan for getting free from confinement. The district court
reasonably concluded the attacks were merely pointless violence,
unprovoked and unmotivated by any animosity between Walker
and his victims.

insufficiently accounted for the number of victims injured,[9] and the viciousness and unprovoked nature of the attacks. The judge also noted the particularized psychological harm Walker caused by assaulting prison guards:

> I consider the responsibility that these officers have every day to appear and treat prisoners with respect, to treat them with an attitude that does not expect violent behavior every day. So there is a responsibility that each of these officers has to think that everything is going to be fine, and yet be on the alert for some inordinately hostile and violent, vicious behavior.

These considerations appropriately relate to the nature, circumstances, and seriousness of the offenses and to the need for just punishment, adequate deterrence, and the protection of the public. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). The reasonableness standard of review is necessarily deferential because the district court is uniquely positioned to determine an appropriate sentence. *See, e.g.*, *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). The district court here observed Walker in court during two lengthy hearings, engaged in conversations with him on the record, listened to him testify, and heard live testimony from one of Walker's victims. The 240-month sentence is one-quarter of the 80-year statutory maximum Walker faced. The court's modest upward variance from the advisory sentencing range was fully consistent with the procedure we have asked district judges to follow post-*Booker*, and Walker's sentence was adequately explained and reasonable.

AFFIRMED.

---

[9] Because he qualified as a career offender under U.S.S.G. § 4B1.1, Walker's adjusted offense level—after receiving a two-level reduction for his guilty plea, U.S.S.G. § 3E1.1(a)—would have been 30 and his criminal history category would have been VI whether he stabbed one or four victims.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*