NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued August 7, 2007
Decided August 10, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-3847

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois |
| v. | No. 4:05CR40088-001-JPG |
| JEFFREY BORDERS, *Defendant-Appellant.* | J. Phil Gilbert, *Judge.* |

**O R D E R**

Jeffrey Borders pleaded guilty to conspiracy to commit mail and wire fraud, 18 U.S.C. §§ 1349, 1341, 1343, after he scammed businesses into paying for magazine advertisements they never purchased.  Borders already had a string of convictions, and while preparing the presentence report for this case, the probation officer caught Borders running another scheme.  The district court sentenced Borders to 180 months' imprisonment, 18 months above the high end of the guidelines range.  Borders raises two challenges to his sentence.  First, he contends that the district court should have, but did not, warn him of its intention to impose a sentence above the guidelines imprisonment range.  Second, he argues that the district court did not sufficiently explain why it deviated from the guidelines range, thus resulting in an unreasonable prison sentence.  Both contentions are frivolous.

In 1996 Borders and his wife began sending fraudulent invoices to businesses that advertised in legitimate magazines. The invoices were, ostensibly, for advertisements printed in other publications, but those publications did not exist. Between 1996 and August 2003 the Borderses (joined in 2002 by their 17-year-old son) billed $1.2 million to 3,385 businesses; more than 900 businesses mailed them checks totaling over $305,000.

In their plea agreement, the parties calculated a total offense level of 25, reflecting a base offense level of 6, *see* U.S.S.G. § 2B1.1(b)(1); increases for intended losses exceeding $1 million, *see id.* § 2B1.1(b)(1)(I), more than 50 victims, *see id.* § 2B1.1(b)(2)(B), and use of a minor in committing the offense, *see id.* § 3B1.4; and a 3-level reduction for acceptance of responsibility, *see* id. § 3E1.1. The parties also agreed that Borders's criminal history placed him in category VI which combined with his total offense level of 25 yielded a recommended imprisonment range of 110 to 137 months. The government agreed not to argue for a sentence outside the guidelines range, and Borders waived his right to appeal except as to the reasonableness of a sentence above the guidelines range as "determined by the Court."

Borders's probation officer then prepared a presentence report, calculating Borders's criminal history and offense level as in the plea agreement, except that he determined there were more than 250 victims, *see* U.S.S.G. § 2B1.1(b)(2)(C), which resulted in a total offense level of 27. Coupling that with Borders's criminal history, the probation officer calculated an imprisonment range of 130 to 162 months. The probation officer also discovered that Borders had not ceased his criminal activity. In particular, Borders was trying to con restaurants by hounding them to refund the price of food he never purchased.

At sentencing the district court adopted the guidelines calculations set forth in the presentence report. Borders insisted that his actual criminal history was not as bad as it looked on paper because, he said, his son and daughter actually committed one of the crimes he pleaded guilty to in the past. He also maintained that he tried the restaurant hustle only after a friend had put him onto it, and he asked for leniency. But the court found that Borders had been "nothing but a liar, a cheat, and a flim-flam man" all his life and was even "trying to do it here standing before me now." The court recounted Borders's "abysmal" history, including eight prior felonies, five for conduct similar to the ad scam. The court found that Borders was "a threat to the general public" and needed "severe punishment." The court labeled Borders a "bad seed" and told him that the "high end of the guidelines isn't sufficient for you." Concluding that "a guideline sentence doesn't take into account all" Borders had done, the court imposed a prison sentence of 180 months, three years of supervised release, and restitution of $305,163.

On appeal Borders first contends that the district court violated Fed. R. Crim. P. 32(h) by not giving him advance notice of its intent to "depart" upward from the guidelines range for his prison sentence. This argument is foreclosed by his appeal waiver, which allows Borders to challenge only the *reasonableness* of an above-guidelines sentence. In any event, his argument is also contrary to circuit precedent. We have held that Rule 32(h) does not require the district court to warn a defendant before imposing a sentence outside the range. *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006). As we explained in *Walker*, after *United States v. Booker*, 543 U.S. 220 (2005), all defendants are on notice that the sentencing court may exercise its discretion to exceed the guidelines range as warranted by factors in 18 U.S.C. § 3553(a), and no additional notice is required. *See Walker*, 447 F.3d at 1007.

Borders next challenges the reasonableness of his sentence, arguing that the district court did not give sufficient reasons for exceeding the guidelines range. A district court must explain, with reference to the 18 U.S.C. § 3553(a) sentencing factors, its choice to sentence the defendant outside the guidelines range; the farther outside the guidelines range the sentence is, the more compelling that explanation must be. *See United States v. Orozco-Vasquez*, 469 F.3d 1101, 1107 (7th Cir. 2006)*; United States v. Valle*, 458 F.3d 652, 656 (7th Cir. 2006). But the court need not discuss every factor, so long as it explains its sentencing choice in a manner consistent with § 3553(a). *United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *Orozco-Vasquez*, 469 F.3d at 1109.

Here the district court adequately justified imposing a term of imprisonment 18 months beyond the 162-month high end of the advisory range. The court commented on Borders's "abysmal" criminal past and noted that Borders "can't help but try to screw people out of money." *See* 18 U.S.C. § 3553(a)(1). Several times the court referenced the need to protect the public from Borders and reasoned that he deserved a severe punishment. *See id.* § 3553(a)(2)(A), (B), (C). The court concluded that a guidelines sentence simply did not account for all of Borders's crimes. *See id.* § 3553(a)(1). Thus, Borders's sentence is not unreasonable. *See Valle*, 458 F.3d at 658-59 (upholding sentence 51 months above guidelines range where district court explained that lengthy sentence was necessary because defendant was likely to keep committing crimes); *Walker*, 447 F.3d at 1008 (noting that increase of 30 months' imprisonment over high end of advisory range was appropriately justified by court's discussion of nature and seriousness of offense and need for deterrence, just punishment, and protection of public).

AFFIRMED.