# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1151

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEROME L. WEATHINGTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CR 66—**David F. Hamilton**, *Judge.*

ARGUED OCTOBER 3, 2007—DECIDED NOVEMBER 8, 2007

Before COFFEY, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jerome Weathington pleaded guilty to five counts of armed robbery, in violation of 18 U.S.C. § 1951(a), and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). After the district court accepted his guilty plea, Mr. Weathington moved at the sentencing hearing to withdraw it. The court denied the motion and sentenced Mr. Weathington to 22 years' imprisonment. On appeal, Mr. Weathington contests the district court's denial of his motion to withdraw his guilty plea. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

In October and November 2005, five fast-food restaurants in Indianapolis were robbed in a similar manner. After each of the first four robberies, witnesses described the perpetrators as two black males carrying guns and wearing hoods or otherwise concealing their faces. According to witnesses, the men entered the restaurants, jumped the counter, and demanded money. After the fifth robbery, witnesses reported that one black man carrying a gun and wearing a hooded sweatshirt, black ski mask, black jacket, red pants, and black-and-yellow Nike shoes entered a McDonald's restaurant; the man held the employees at gunpoint and left with cash from the register and a blue bag of money from the safe, totaling about $2,000. Witnesses saw the robber get into a red van.

Shortly after the last robbery, police stopped a red van near the McDonald's and found Mr. Weathington in the passenger seat. Police also found in the van $2,000 in cash, a blue bag matching the one taken from the McDonald's, black clothing and face masks, red pants, black-and-yellow Nike shoes, a gun and several cash-register drawers matching the descriptions of drawers taken in the previous robberies. The woman driving the van told police that Mr. Weathington had robbed the McDonald's; another person who had acted as a lookout during the robbery confirmed her report. A third man, who had participated in some of the previous robberies, implicated Mr. Weathington in all five robberies.

Mr. Weathington pleaded guilty to five counts of armed robbery and one count of brandishing a firearm

during and in relation to a crime of violence. In exchange, the Government promised to dismiss four additional firearm charges. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the agreement provided for a specific sentence of 22 years' imprisonment.

At the plea hearing, Mr. Weathington said that he had read and understood the terms of the plea agreement and that he had discussed it with his attorney. The court explained four times that, if Mr. Weathington pleaded guilty and the court accepted the plea agreement, Mr. Weathington would receive a 22-year sentence, no matter what the calculation under the advisory sentencing guidelines might be. The court explained that, even if the advisory guidelines calculation in the presentence report suggested a reduction for acceptance of responsibility, that calculation would not affect the sentence Mr. Weathington would receive because of the specific-term plea agreement. Mr. Weathington said he understood that, if he pleaded guilty under the agreement, he would receive a 22-year sentence. The court also asked about Mr. Weathington's mental state. Mr. Weathington said he thought he needed mental health services, but he also said that he had never received a diagnosis from a psychiatrist, that he was feeling "all right" that afternoon and that he was able to think clearly about his plea. Plea Hr'g Tr. at 5-6. The court concluded that Mr. Weathington was competent to enter an informed and intelligent guilty plea.

At one point during the hearing, Mr. Weathington said he wanted to continue the case so that he could have more time to think about the plea agreement. The judge assured him that nobody could make him plead guilty and that he could go to trial instead, but the judge admon-

ished him that his decision would "be once and for all." *Id.* at 18. Mr. Weathington decided to plead guilty and said, under oath, that he had not received any other promises or threats to induce his plea. Mr. Weathington then admitted that he had robbed the five restaurants and brandished a firearm during the last robbery. The court accepted Mr. Weathington's guilty plea and found that he had knowingly and voluntarily entered the plea.

At his sentencing hearing, however, Mr. Weathington moved to withdraw his guilty plea. He argued that he mistakenly thought he would receive a reduction in his sentence based on his acceptance of responsibility. He also argued that he was coerced into pleading guilty in two ways. First, he wanted to move out of the jail in which he had been held because it was dirty, because he did not receive enough soap and because he had lost visitation privileges for six months. Second, he felt pressured by the Government-imposed deadline by which he had to decide either to accept the plea agreement or to go to trial. Additionally, Mr. Weathington argued that he was mentally incompetent to plead guilty; in reply to the district court's inquiry, however, his counsel told the court that she had no reason to doubt his competence.

The district court denied the motion to withdraw the plea and found that Mr. Weathington had not presented a "fair and just reason" to justify a withdrawal. Sent. Tr. at 66. The court explained that Mr. Weathington's contradiction of his prior sworn testimony that he understood that he would receive a 22-year sentence was not a fair and just reason to withdraw the plea. The district court also determined that being "unhappy and uncomfortable in jail" did not show that Mr. Weathington's plea was involuntary or unknowing. *Id.* at 66-67. Lastly, based on

the court's extensive observations of, and discussions with, Mr. Weathington, as well as defense counsel's statement that she had no reason to doubt Mr. Weathington's competence, the court found that there was no "reasonable cause to believe" that Mr. Weathington was suffering from a mental disease or defect that rendered him incompetent at the plea hearing or at the sentencing hearing. *Id.* at 70-71.

## II

## DISCUSSION

On appeal, Mr. Weathington submits that the district court abused its discretion in denying his motion to withdraw his guilty plea. We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion and review the underlying factual findings for clear error. *United States v. Walker*, 447 F.3d 999, 1004 (7th Cir. 2006). A defendant may withdraw a guilty plea before sentencing if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *Walker*, 447 F.3d at 1004. The defendant bears the burden of demonstrating a fair and just reason to withdraw his plea, and, after a thorough Rule 11 plea colloquy, faces an uphill battle in doing so. *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003).

## A.

Mr. Weathington makes three arguments to support his contention that the district court abused its discretion in denying his motion. First, he contends that it would be fair and just to allow him to withdraw his guilty plea

because he mistakenly believed that he would receive a sentence of fewer than 22 years' imprisonment based on a reduction for acceptance of responsibility. We cannot accept this contention. "Generally, the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason" to allow him to withdraw his plea. *United States v. Gilliam*, 255 F.3d 428, 434 (7th Cir. 2001) (quoting *United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir. 1991) (holding that a defendant's misunderstanding that he might be subject to a four-level increase in offense level based on his leadership position in a drug organization was not a fair and just reason to allow withdrawal of guilty plea)). Representations made by a defendant at a Rule 11 plea colloquy are presumed true. *Bennett*, 332 F.3d at 1099. The district court, therefore, may discredit any reason that a defendant gives for withdrawing his guilty plea that contradicts his testimony at a plea hearing. *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002); *see also Walker*, 447 F.3d at 1005.

The district court here conducted an exemplary plea colloquy. The court asked questions beyond those required by Rule 11 to ensure that Mr. Weathington understood the charges to which he pleaded guilty and the sentence he would receive. It explained to Mr. Weathington at least four times during the Rule 11 hearing that, if he pleaded guilty, the court would sentence him to 22 years' imprisonment under the plea agreement. The court inquired if Mr. Weathington understood that he and the Government had agreed to a 22-year sentence. After receiving affirmative answers to the questions, the court reiterated, "So I have the option, I can accept the plea and sentence you to 22 years in prison, or I can reject the

plea. And if I do that, I'd give you an opportunity to change your mind." Plea Hr'g Tr. at 14. Mr. Weathington said that he understood.

The court also explained that the guidelines calculation would not affect his sentence. Mr. Weathington asked if he would receive credit for his acceptance of responsibility. The court told Mr. Weathington that he was benefitting by the Government's agreement to drop some of the original charges against him, but that, if Mr. Weathington accepted the plea, "the sentence will be 22 years in prison no matter how the guidelines get calculated." *Id.* at 20. Mr. Weathington said that he understood.

Mr. Weathington later contradicted his sworn testimony when he claimed at the sentencing hearing that he did not understand that he would receive a final sentence of 22 years and that the guidelines calculation would not affect his sentence. The district court, having conducted a thorough plea colloquy addressing just this issue, properly credited Mr. Weathington's statements at the plea hearing when it rejected his motion to withdraw his guilty plea. *Schuh*, 289 F.3d at 975; *Walker*, 447 F.3d at 1005.

In arguing that his mistaken belief about his sentence should permit him to withdraw his plea, Mr. Weathington relies on *United States v. Davis*, 212 F.2d 264 (7th Cir. 1954). In *Davis*, a defendant filed a motion under 28 U.S.C. § 2255 to vacate judgment entered on a guilty plea on the ground that his attorney had misinformed him of the nature of the charge to which he had pleaded guilty. *Id.* at 266. At the plea hearing, the district court had not inquired at all whether the defendant understood or was advised of the charges to which he was pleading guilty. *Id.* at 267. On appeal, we held that Rule 11 permits the defendant to withdraw his plea when it

appears the plea was "made under some mistake or misapprehension." *Id.* (quotation omitted).

*Davis* is different from Mr. Weathington's case in two ways. First, in *Davis*, the defendant did not have notice of the charge against him, which we found was a "serious and substantial" mistake because a defendant's right to notice is granted by the Constitution and is "indispensable to a valid plea." *Id.* at 267. In contrast, the expectation of receiving a lower sentence based on acceptance of responsibility is not a constitutional right. Second, in *Davis*, the defendant's misunderstanding of the charge against him was attributable to the failures of his attorney and the court. Here, Mr. Weathington does not maintain that his attorney misled him, nor could he argue that the district court failed to ensure his understanding, given the court's extensive questioning during the plea colloquy.

**B.**

Mr. Weathington's second argument is that his plea was not voluntary because the poor conditions in the jail in which he was being held, coupled with the close proximity of trial, forced him to plead guilty. These are not fair and just reasons to permit Mr. Weathington to withdraw his guilty plea. Courts may allow defendants to withdraw their guilty pleas if the defendants can show they did not enter the pleas voluntarily and knowingly. A defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, however, faces "a heavy burden of persuasion." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987).

At the plea hearing, the district court carefully assessed whether Mr. Weathington was pleading voluntarily. When

Mr. Weathington said he wanted to continue the case and not plead guilty that day, the court asked why Mr. Weathington wanted a continuance and whether he had talked to his counsel about his options. Mr. Weathington said that he had spoken with counsel but wanted more time to think about the plea agreement. The court told Mr. Weathington that "nobody can make you plead guilty" and explained, again, the consequences of the plea agreement. Plea Hr'g Tr. at 10, 18. After Mr. Weathington decided to proceed, the court asked him if anyone had made any threats or promises to get him to plead guilty. Mr. Weathington said no and he did not mention either the conditions of the jail or the proximity of his trial date.

Even though Mr. Weathington did not discuss at the plea hearing the conditions of the jail in which he was being held, the court allowed Mr. Weathington as much time as he needed at the sentencing hearing to explain how the circumstances in jail forced him to plead guilty. He said only that he wanted to be moved to a cleaner prison that would allow him visitation with his family. He also protested that he had only three days to decide whether to accept the plea agreement or to go to trial.

The district court properly concluded that Mr. Weathington's circumstances in jail were far from unusual and did not make his plea involuntary. *Cf. Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) ("The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons."). The court also correctly concluded that the Government could impose a deadline for the plea agreement and that the deadline provided sufficient time for Mr. Weathington to make a knowing and voluntary decision.

**C**.

Finally, Mr. Weathington contends that the district court should have ordered a psychological examination based on concerns he had raised about his mental health at the plea and sentencing hearings. The district court is required to order a hearing to determine a defendant's competency only when the court finds "reasonable cause to believe" that the defendant may be suffering from a mental disorder that makes him incompetent to the extent that he cannot understand the nature and consequences of the proceedings against him or assist in his defense. 18 U.S.C. § 4241(a); *United States v. Grimes*, 173 F.3d 634, 635-36 (7th Cir. 1999). The court may determine informally whether reasonable cause exists by observing the defendant's demeanor and assessing his statements during the plea colloquy and other interactions with the court. *Grimes*, 173 F.3d at 636. If the preliminary inquiry does not establish reasonable cause to believe the defendant is incompetent, a hearing is not mandatory. *United States v. Graves*, 98 F.3d 258, 261 (7th Cir. 1996).

The district court did not abuse its discretion in refusing to order a psychological evaluation or to hold an evidentiary hearing to determine Mr. Weathington's competence to plead guilty. Mr. Weathington's behavior did not suggest that he was incompetent, and he did not invite the court's attention to previous psychiatric records or other sources showing a serious mental illness. *See Grimes*, 173 F.3d at 636. Mr. Weathington informed the court that he had suffered from narcolepsy and was seeking mental health services in jail because he thought he had a problem that caused him to commit crimes; however, upon further questioning by the court, Mr. Weathington said that he felt "all right" that afternoon

and that he was able to think clearly about his guilty plea. Plea Hr'g Tr. at 5-6. Throughout the rest of the hearing, Mr. Weathington provided cogent answers to the court's questions and engaged in discussion with the court about options other than prison and about the consequences if he did not plead guilty. Finally, Mr. Weathington concedes that neither he nor his attorney suggested that his mental problems affected his competence to plead guilty. In fact, Mr. Weathington's attorney said that she had "no reason to doubt his competence or sanity." Sent. Tr. at 70.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*