Justice Alito,
dissenting.
The fundamental question in this case is whether, under the remedial decision in United States v. Booker, 543 U. S. 220 (2005), a district court must give the policy decisions that are embodied in the Sentencing Guidelines at least some significant weight in making a sentencing decision. I would answer that question in the affirmative and would therefore affirm the decision of the Court of Appeals.
I
In Booker, a bare majority held that the Sentencing Reform Act of 1984 (Sentencing Reform Act), as amended, 18 U. S. C. § 3551 et seq., 28 U. S. C. § 991 et seq., violated the Sixth Amendment insofar as it required district judges to follow the United States Sentencing Guidelines, but another *62 bare majority held that this defect could be remedied by excising the two statutory provisions, 18 U. S. C. §§ 3553(b)(1) and 3742(e) (2000 ed. and Supp. IV), that made compliance with the Guidelines mandatory. As a result of these two holdings, the lower federal courts were instructed that the Guidelines must be regarded as “effectively advisory,” Booker, 543 U. S., at 245, and that individual sentencing decisions are subject to appellate review for “ ‘reasonableness/ ” id., at 262. The Booker remedial opinion did not explain exactly what it meant by a system of “advisory” guidelines or by “reasonableness” review, and the opinion is open to different interpretations.
It is possible to read the opinion to mean that district judges, after giving the Guidelines a polite nod, may then proceed essentially as if the Sentencing Reform Act had never been enacted. This is how two of the dissents interpreted the Court’s opinion. Justice Stevens wrote that sentencing judges had “regained] the unconstrained discretion Congress eliminated in 1984” when it enacted the Sentencing Reform Act. Id., at 297. Justice Scalia stated that “logic compels the conclusion that the sentencing judge ... has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.” Id., at 305.
While this is a possible understanding of the remedial opinion, a better reading is that sentencing judges must still give the Guidelines’ policy decisions some significant weight and that the courts of appeals must still police compliance. In a key passage, the remedial opinion stated:
“The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U. S. C. A. §§ 3553(a)(4), (5) (Supp. 2004). But compare post, at 305 (Scalia, J., dissenting in part) (claiming that the sentencing judge has the same discretion ‘he possessed before the Act was passed’). The courts of appeals review sentencing decisions for unreasonableness. These fea *63 tures of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress’ preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” Id., at 264-265 (emphasis added).
The implication of this passage is that district courts are still required to give some deference to the policy decisions embodied in the Guidelines and that appellate review must monitor compliance. District courts must not only “consult” the Guidelines, they must “take them into account.” Id., at 264. In addition, the passage distances the remedial majority from Justice Scalia’s position that, under an advisory Guidelines scheme, a district judge would have “discretion to sentence anywhere within the ranges authorized by statute” so long as the judge “state[d] that ‘this court does not believe that the punishment set forth in the Guidelines is appropriate for this sort of offense.’” Id., at 805 (opinion dissenting in part).
Moreover, in the passage quoted above and at other points in the remedial opinion, the Court expressed confidence that appellate review for reasonableness would help to avoid “ ‘excessive sentencing disparities’ ” and “would tend to iron out sentencing differences.” Id., at 263. Indeed, a major theme of the remedial opinion, as well as our decision last Term in Rita v. United States, 551 U. S. 338 (2007), was that the post-Booker sentencing regime would still promote the Sentencing Reform Act’s goal of reducing sentencing disparities. See, e. g., 551 U. S., at 348, 349, 354; Booker, 543 U. S., at 259-260, 263-264.
It is unrealistic to think this goal can be achieved over the long term if sentencing judges need only give lipservice to the Guidelines. The other sentencing factors set out in § 3553(a) are so broad that they impose few real restraints on sentencing judges. See id., at 305 (Scalia, J., dissenting in part). Thus, if judges are obligated to do no more than consult the Guidelines before deciding upon the sentence *64 that is, in their independent judgment, sufficient to serve the other § 3553(a) factors, federal sentencing will not “move ... in Congress’ preferred direction.” Id., at 264 (opinion of the Court). On the contrary, sentencing disparities will gradually increase. Appellate decisions affirming sentences that diverge from the Guidelines (such as the Court’s decision today) will be influential, and the sentencing habits developed during the pre-Booker era will fade.
Finally, in reading the Booker remedial opinion, we should not forget the decision’s constitutional underpinnings. Booker and its antecedents are based on the Sixth Amendment right to trial by jury. The Court has held that (at least under a mandatory guidelines system) a defendant has the right to have a jury, not a judge, find facts that increase the defendant’s authorized sentence. See id., at 230-232; Blakely v. Washington, 542 U. S. 296, 303-304 (2004). It is telling that the rules set out in the Court’s opinion in the present case have nothing to do with juries or factfinding and, indeed, that not one of the facts that bears on petitioner’s sentence is disputed. What is at issue, instead, is the allocation of the authority to decide issues of substantive sentencing policy, an issue on which the Sixth Amendment says absolutely nothing. The yawning gap between the Sixth Amendment and the Court’s opinion should be enough to show that the Blakely-Booker line of cases has gone astray.
In Blakely, the Court drew a distinction — between judicial factfinding under a guidelines system and judicial factfinding under a discretionary sentencing system, see 542 U. S., at 309-310 — that, in my judgment, cannot be defended as a matter of principle. It would be a coherent principle to hold that any fact that increases a defendant’s sentence beyond the minimum required by the jury’s verdict of guilt must be found by a jury. Such a holding, however, would clash with accepted sentencing practice at the time of the adoption of the Sixth Amendment. By that time, many States had *65 enacted criminal statutes that gave trial judges the discretion to select a sentence from within a prescribed range,[1] and the First Congress enacted federal criminal statutes that were cast in this mold. See An Act for the Punishment of certain Crimes against the United States, 1 Stat. 112.[2]
*66 Under a sentencing system of this type, trial judges inevitably make findings of fact (albeit informally) that increase sentences beyond the minimum required by the jury’s verdict. For example, under a statute providing that the punishment for burglary is, say, imprisonment for up to x years, the sentencing court might increase the sentence that it would have otherwise imposed by some amount based on evidence introduced at trial that the defendant was armed or that, before committing the crime, the defendant had told a confederate that he would kill the occupants if they awakened during the burglary. The only difference between this sort of factfinding and the type that occurs under a guidelines system is that factfinding under a guidelines system is explicit and the effect of each critical finding is quantified. But in both instances, facts that cause a defendant to spend more time in prison are found by judges, not juries, and therefore no distinction can be drawn as a matter of Sixth Amendment principle.
The Court’s acceptance of this distinction also produced strange collateral consequences. A sentencing system that gives trial judges the discretion to sentence within a specified range not only permits judicial factfinding that may increase a sentence, such a system also gives individual judges discretion to implement their own sentencing policies. This latter feature, whether wise or unwise, has nothing to do with the concerns of the Sixth Amendment, and a principal objective of the Sentencing Reform Act was to take this power out of the hands of individual district judges.
The Booker remedy, however, undid this congressional choice. In curing the Sentencing Reform Act’s perceived defect regarding judicial factfinding, Booker restored to the district courts at least a measure of the policymaking author *67 ity that the Sentencing Reform Act had taken away. (How much of this authority was given back is, of course, the issue here.)
I recognize that the Court is committed to the Blakely - Booker line of cases, but we are not required to continue along a path that will take us further and further off course. Because the Booker remedial opinion may be read to require sentencing judges to give weight to the Guidelines, I would adopt that interpretation and thus minimize the gap between what the Sixth Amendment requires and what our cases have held.
II
A
Read fairly, the opinion of the Court of Appeals holds that the District Court did not properly exercise its sentencing discretion because it did not give sufficient weight to the policy decisions reflected in the Guidelines. Petitioner was convicted of a serious crime, conspiracy to distribute “ecstasy.” He distributed thousands of pills and made between $30,000 and $40,000 in profit. Although he eventually left the conspiracy, he did so because he was worried about apprehension. The Sentencing Guidelines called for a term of imprisonment of 30 to 37 months, but the District Court imposed a term of probation.
Compelled to interpret the Booker remedial opinion, the District Court, it appears, essentially chose the interpretation outlined in Justice Stevens’ and Justice Scalia’s dissents. The District Court considered the sentence called for by the Guidelines, but I see no evidence that the District Court deferred to the Guidelines to any significant degree. Rather, the court determined what it thought was appropriate under the circumstances and sentenced petitioner accordingly.
If the question before us was whether a reasonable jurist could conclude that a sentence of probation was sufficient in *68 this case to serve the purposes of punishment set out in 18 U. S. C. § 3553(a)(2), the District Court’s decision could not be disturbed. But because I believe that sentencing judges must still give some significant weight to the Guidelines sentencing range, the Commission’s policy statements, and the need to avoid unwarranted sentencing disparities, §§ 3553(a)(3), (4), and (5) (2000 ed. and Supp. V), I agree with the Eighth Circuit that the District Court did not properly exercise its discretion.
Appellate review for abuse of discretion is not an empty formality. A decision calling for the exercise of judicial discretion “hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.” Albemarle Paper Co. v. Moody, 422 U. S. 405, 416 (1975). Accord, United States v. Taylor, 487 U. S. 326, 336 (1988); Franks v. Bowman Transp. Co., 424 U. S. 747, 783 (1976) (Powell, J., concurring in part and dissenting in part). And when a trial court is required by statute to take specified factors into account in making a discretionary decision, the trial court must be reversed if it “ignored or slighted a factor that Congress has deemed pertinent.” Taylor, supra, at 337. See Hensley v. Eckerhart, 461 U. S. 424, 438-440 (1983) (finding an abuse of discretion where the District Court “did not properly consider” 1 of 12 factors Congress found relevant to the amount of attorney’s fees when passing the Civil Rights Attorney’s Fees Awards Act of 1976, 42 U. S. C. § 1988). See also United States v. Oakland Cannabis Buyers’ Cooperative, 532 U. S. 483, 497-498 (2001) (A court exercising its discretion “cannot ‘ignore the judgment of Congress, deliberately expressed in legislation.’ Virginian R. Co. v. Railway Employees, 300 U. S. 515, 551 (1937)”); American Paper Institute, Inc. v. American Elec. Power Service Corp., 461 U. S. 402, 413 (1983) (“To decide whether [Federal Energy Regulatory Commission’s] action was ... an abuse of discretion, we must determine whether the agency ade *69 quately considered the factors relevant” under the statute (internal quotation marks omitted)); Southern S. S. Co. v. NLRB, 316 U. S. 31, 46, 47 (1942) (finding an abuse of discretion where the National Labor Relations Board sought to fulfill one congressional objective but “wholly ignore[d] other and equally important Congressional objectives”).
Here, the District Court “slighted” the factors set out in 18 U. S. C. §§ 3553(a)(3), (4), and (5) (2000 ed. and Supp. V)— namely, the Guidelines sentencing range, the Commission’s policy statements, and the need to avoid unwarranted sentencing disparities. Although the Guidelines called for a prison term of at least 30 months, the District Court did not require any imprisonment — not one day. The opinion of the Court makes much of the restrictions and burdens of probation, see ante, at 48-49, but in the real world there is a huge difference between imprisonment and probation. If the District Court had given any appreciable weight to the Guidelines, the District Court could not have sentenced petitioner to probation without very strong countervailing considerations.
The court listed five considerations as justification for a sentence of probation: (1) petitioner’s “voluntary and explicit withdrawal from the conspiracy,” (2) his “exemplary behavior while on bond,” (3) “the support manifested by family and friends,” (4) “the lack of criminal history, especially a complete lack of any violent criminal history,” and (5) his age at the time of the offense, 21. App. 97.
Two of the considerations that the District Court cited— “the support manifested by family and friends” and his age, ibid. — amounted to a direct rejection of the Sentencing Commission’s authority to decide the most basic issues of sentencing policy. In the Sentencing Reform Act, Congress required the Sentencing Commission to consider and decide whether certain specified factors — including “age,” “education,” “previous employment record,” “physical condition,” *70 “family ties and responsibilities,” and “community ties”— “have any relevance to the nature [and] extent ... of an appropriate sentence.” 28 U. S. C. § 994(d). These factors come up with great frequency, and judges in the preSentencing Reform Act era disagreed regarding their relevance. Indeed, some of these factors were viewed by some judges as reasons for increasing a sentence and by others as reasons for decreasing a sentence. For example, if a defendant had a job, a supportive family, and friends, those factors were sometimes viewed as justifying a harsher sentence on the ground that the defendant had squandered the opportunity to lead a law-abiding life. Alternatively, those same factors were sometimes viewed as justifications for a more lenient sentence on the ground that a defendant with a job and a network of support would be less likely to return to crime. If each judge is free to implement his or her personal views on such matters, sentencing disparities are inevitable.
In response to Congress’ direction to establish uniform national sentencing policies regarding these common sentencing factors, the Sentencing Commission issued policy statements concluding that “age,” “family ties,” and “community ties” are relevant to sentencing only in unusual cases. See United States Sentencing Commission, Guidelines Manual §§5H1.1 (age), 5H1.6 (family and community ties) (Nov. 2006). The District Court in this case did not claim that there was anything particularly unusual about petitioner’s family or community ties or his age, but the court cited these factors as justifications for a sentence of probation. Although the District Court was obligated to take into account the Commission’s policy statements and the need to avoid sentencing disparities, the District Court rejected Commission policy statements that are critical to the effort to reduce such disparities.
The District Court relied on petitioner’s lack of criminal history, but criminal history (or the lack thereof) is a central *71 factor in the calculation of the Guidelines range. Petitioner was given credit for his lack of criminal history in the calculation of his Guidelines sentence. Consequently, giving petitioner additional credit for this factor was nothing more than an expression of disagreement with the policy determination reflected in the Guidelines range.
The District Court mentioned petitioner’s “exemplary behavior while on bond,” App. 97, but this surely cannot be regarded as a weighty factor.
Finally, the District Court was plainly impressed by petitioner’s “voluntary and explicit withdrawal from the conspiracy.” Ibid. As the Government argues, the legitimate strength of this factor is diminished by petitioner’s motivation in withdrawing. He did not leave the conspiracy for reasons of conscience, and he made no effort to stop the others in the ring. He withdrew because he had become afraid of apprehension. 446 F. 3d 884, 886 (CA8 2006). While the District Court was within its rights in regarding this factor and petitioner’s “self-rehabilitat[ion],” App. 75, as positive considerations, they are not enough, in light of the Guidelines’ call for a 30- to 37-month prison term, to warrant a sentence of probation.
B
In reaching the opposite conclusion, the Court attacks straw men. The Court unjustifiably faults the Eighth Circuit for using what it characterizes as a “rigid mathematical formula.” Ante, at 47. The Eighth Circuit (following a Seventh Circuit opinion) stated that a trial judge’s justifications for a sentence outside the Guidelines range must be “proportional to the extent of the difference between the advisory range and the sentence imposed.” 446 F. 3d, at 889 (quoting United States v. Claiborne, 439 F. 3d 479, 481 (CA8 2006), in turn quoting United States v. Johnson, 427 F. 3d 423, 426-427 (CA7 2005); internal quotation marks omitted). Taking this language literally as requiring a mathematical *72 computation, the Court has an easy time showing that mathematical precision is not possible:
“[T]he mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? . . . What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him?” Ante, at 49.
This criticism is quite unfair. It is apparent that the Seventh and Eighth Circuits did not mean to suggest that proportionality review could be reduced to a mathematical equation, and certainly the Eighth Circuit in this case did not assign numbers to the various justifications offered by the District Court. All that the Seventh and Eighth Circuits meant, I am convinced, is what this Court’s opinion states, i. e., that “the extent of the difference between a particular sentence and the recommended Guidelines range” is a relevant consideration in determining whether the District Court properly exercised its sentencing discretion. Ante, at 41.
This Court’s opinion is also wrong in suggesting that the Eighth Circuit’s approach was inconsistent with the abuse-of-discretion standard of appellate review. Ante, at 49. The Eighth Circuit stated unequivocally that it was conducting abuse-of-discretion review, 446 F. 3d, at 888-889; abuse-of-discretion review is not toothless; and it is entirely proper for a reviewing court to find an abuse of discretion when important factors — in this case, the Guidelines, policy statements, and the need to avoid sentencing disparities — are “slighted,” Taylor, 487 U. S., at 337. The mere fact that the Eighth Circuit reversed is hardly proof that the Eighth Circuit did not apply the correct standard of review.
*73 Because I believe that the Eighth Circuit correctly interpreted and applied the standards set out in the Booker remedial opinion, I must respectfully dissent.[3]

 To take some examples, Connecticut, as of 1784, punished burglary and robbery without violence with imprisonment of up to 10 years “at the Discretion of the Superior Court before whom the Conviction is had.” See Acts and Laws of the State of Connecticut 18 (1784). A 1749 Delaware law punished assault of a parent with imprisonment of up to 18 months. Laws of the State of Delaware 306 (1797). A 1793 Maryland law gave courts the ability to, “in their discretion, adjudge” criminal defendants “to serve and labour for any time, in their discretion, not exceeding” specified terms of years. Digest of the Laws of Maryland 196 (T. Herty ed. 1799). By 1785, Massachusetts allowed judges to sentence criminals convicted of a variety of offenses, including assault and manslaughter, “according to the aggravation of the offense,” or “at the discretion of the Court.” The Perpetual Laws, of the Commonwealth of Massachusetts (1788), reprinted in The First Laws of The Commonwealth of Massachusetts 244-252 (J. Cushing comp. 1981). In 1791, New Hampshire passed a law punishing certain assaults with imprisonment of up to two years, and forgery with imprisonment of up to three years, at the court’s discretion. See Laws of the State of New Hampshire (1792). New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and South Carolina likewise enacted criminal statutes providing for indeterminate sentences of imprisonment at the discretion of the court either before, or in the immediate wake of, the ratification of the Sixth Amendment. See, e. g., Laws of the State of New Jersey 210-218 (1800) (detailing laws passed in 1796); 2 Laws of the State of New York 45-48, 211, 242-248,390 (1789); Laws of the State of North Carolina 288, 389 (J. Iredell ed. 1791); An Abridgment of the Laws of Pennsylvania 1-47 (C. Read ed. 1801) (detailing laws passed 1790-1794); Public Laws of the State of Rhode Island and Providence Plantations 584-600 (1798); Public Laws of the State of South Carolina 55, 61, 257, 497 (J. Grimke ed. 1790).

 We have often looked to laws passed by the First Congress to aide interpretation of the Bill of Rights, which that Congress proposed. See, e. g., Harmelin v. Michigan, 501 U. S. 957, 980 (1991) (opinion of Scalia, J.) (noting, while interpreting the Eighth Amendment, that “[t]he actions of the First Congress . . . are of course persuasive evidence of what the Constitution means”); Marsh v. Chambers, 463 U. S. 783, 788-790 (1983) (looking to the actions of the First Congress in interpreting the First *66 Amendment); Carroll v. United States, 267 U. S. 132, 150-152 (1925) (looking to the actions of the First Congress in interpreting the Fourth Amendment).

 While I believe that the Court’s analysis of the sentence imposed in this ease does not give sufficient weight to the Guidelines, it is noteworthy that the Court’s opinion does not reject the proposition that the policy decisions embodied in the Guidelines are entitled to at least some weight. The Court’s opinion in this ease conspicuously refrains from directly addressing that question, and the opinion in Kimbrough v. United States, post, p. 85, is explicitly equivocal, stating that “while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge’s view that the Guidelines range ‘fails properly to reflect § 3553(a) considerations’ even in a mine-run case,” post, at 109 (quoting Rita v. United States, 551 U. S. 338, 351 (2007)).